## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

IN RE:                                    )
                                          )
JOSEPH ANTHONY NICOTERA                   )      Case No. 20-31700-KLP
CAROLYN MARIE NICOTERA                    )      Chapter 13
                                          )
                Debtors                   )

## MEMORANDUM IN SUPPORT OF MOTION TO IMPOSE
## AUTOMATIC STAY AND TO EXTEND AUTOMATIC STAY

COME NOW, JOSEPH ANTHONY NICOTERA and CAROLYN MARIE NICOTERA

(the "Debtors"), by counsel, pursuant to 11 U.S.C. § 362(c) and file the following Memorandum

in Support of Motion to Impose Automatic Stay and Extend Automatic Stay and, and affirmatively

state as follows:

### Jurisdiction

1.      Jurisdiction of this Court over the instant matter is based upon 28 U.S.C. §§ 1334

and 157 in that this action arises in and relates to the bankruptcy case of the Debtor.

2.      This proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (K), and

(O).

3.      Venue is proper pursuant to 28 U.S.C. § 1409.

### Background Facts

4.      On March 27, 2020 (hereinafter the "Petition Date"), the Debtors filed a petition

for relief under Chapter 13 of the Bankruptcy Code (the "instant case").

James E. Kane (VSB# 30081)
KANE & PAPA, P.C.
P. O. Box 508
Richmond, Virginia 23218-0508
Telephone (804) 225-9500
*Counsel for Debtors*

5.      Within the year prior to filing the instant case, Joseph Anthony Nicotera was a debtor in two (2) pending Chapter 13 bankruptcy cases which were dismissed, a Chapter 13 case filed on June 12, 2019 and dismissed on or about September 25, 2019 (Case No. 19-33126) ("First Case") and a Chapter 13 case filed on November 8, 2019 and dismissed on or about March 31, 2020 (Case No. 19-35903) ("Second Case").

6.      Within the year prior to filing the instant case, Carolyn Marie Nicotera was a co-debtor in the First Case.

7.      The First Case was dismissed on the Chapter 13 Trustee's Motion due to delinquent payments.  Prior to filing the First Case, Mr. Nicotera was employed by a Federal government contractor.   During that time the Debtors had worked out mortgage payment arrangements with their mortgage companies with plans to be caught up during the first quarter of 2019. Unfortunately Mr. Nicotera was furloughed from his job in December 2018 and he had no income unable for several weeks. This resulted in the Debtors not being able to continue the payment arrangements they had made with their mortgage companies. The Debtors attempted to work out a temporary forbearance, but neither bank was willing to do so.  At the time of the filing of the First Case, the Debtors were under the belief that Mr. Nicotera's furlough was temporary and he would start working in a relatively short time.  Unfortunately the furlough was not temporary and Mr. Nicotera was not re-hired, and he had to rely on his own business for income.  In addition, Mr. Nicotera's employer has failed to pay him his final paycheck in excess of $10,000, causing further strain on the Debtors.

8.      During the First Case, the Debtors were instructed to use the TFS to make Trustee payments.  The Debtors experienced some issues with the TFS platform and requested help from their counsel, who instructed them to contact the TFS Help Desk, which they did.  After several

days the Help Desk finally respond to the Debtors, and they thought they had resolved the payment issue, and they remitted their first payment. This issue, coupled with the fact the Debtor had little to no liquid funds on hand (due to my job loss) to meet all of their financial obligations, made it very challenging to make all of the Trustee payments. Prior to the hearing on the Motion to Dismiss the First Case, the Debtors provided their counsel with proof the payment was made via TFS, but counsel informed them the this evidence was insufficient to the Court at the hearing, and the case was dismissed.

9.    After the First Case was dismissed, the Debtors had no intention or interest in refiling a bankruptcy petition as they believed they had worked out payment plans with their creditors, including the IRS, Virginia Department of Taxation, and various other creditors. With respect to the mortgages, the Debtors worked out loan modifications with US Bank and Pentagon Federal Credit Union. They were unsuccessful in reaching an agreement with Virginia Partners Bank. Once Virginia Partners Bank informed the Debtors that their payment offer would not be accepted, the Debtors were left with three choices, find money to pay off the note that was being called (approximately $108,000), accept the foreclosure, or refile for bankruptcy. While the Debtors did have two potential sources to help them pay off the Virginia Partners Bank note in its entirety, they needed additional time to do so. The Debtors contacted Virginia Partners Bank and informed them of this possibility. Virginia Partners Bank indicated that they would consider an extension of time. Given how close the foreclosure date was, the Debtors were concerned Virginia Partners Bank may run out the clock and proceed with the foreclosure. Mr. Nicotera personally went to Virginia Partners Bank to plead personally for additional time. When I showed up, he was not permitted to speak with the representative handling his loan. Despite the efforts of the Debtors, Virginia Partners Bank would not allow the Debtors additional time to enough time to put together

3

the funds to cure the default, and proceeded with the foreclosure.  Once the Debtors understood

this, they contacted an attorney to start the refiling for Chapter 13 bankruptcy.  The Debtors spent

hours and days working with their creditors to make payment arrangements with their creditors.

Virginia Partners Bank was the only creditor one not willing to give them the time they needed to

cure the default.  It was Virginia Partner's initiation of foreclosure proceedings that necessitated

the filing of the Second Case.

10.    Since the dismissal of the Second Case, Mrs. Nicotera's business was starting to

gain traction and generate income, but not enough to carry the family while Mr. Nicotera was

looking for work.  After Mr. Nicotera was furloughed he continued to job hunt and re-engage work

with his own company with Strategic Business Solutions. Because of the furlough and that the

work he does is primarily Federal contracting, the job/contracting environment was a bit tight at

that time, and good solid consistent work was difficult to find and maintain. But the opportunities

for Mr. Nicotera were starting to come in the form of solid commitments from

contractors/employers. Going into the Second Case, he was starting to get into a solid position to

be able to meet all of my financial obligations, including payment to the Trustee.  That being said,

it took longer than expected for Mr. Nicotera to being receiving payments from his clients.  And,

this once again, put a strain on my finances.  In order to meet my financial obligations I was forced

to reach out to family members for assistance.  Two issues, with the Second Case with respect to

the Trustee payment.  First, the Debtors were not in agreement (or at least not understanding)

regarding the monthly payment.  The Debtors was able and willing to make the first payment of

$3,900.00.  However, they were not sure about being able to make future payments because Mr.

Nicotera had still not been paid over $10,000 from his prior employer and he was still waiting on

payments from clients.  The Debtors were told by counsel that the plan could be adjusted if need

be.  However, prior to their first payment they were informed by counsel the payment plan payment would need to be increased.

11.    Since the dismissal of the Second Case, Mr. Nicotera has secured a full-time job in Information Technology with Cask NX, LLC and Mrs. Nicotera's business is profitable and successfully growing.  In addition, the Debtors also have income from Mr. Nicotera's business as well as rental income.  Now that the Debtors' financial situation has improved, they are confident that they can meet our regular payments and the Trustee payments in this case.

**Facts of the Instant Case**

12.    In the instant case, Debtors have proposed a Chapter 13 Plan (the "Plan") that commits to pay the Trustee all projected disposable income, $2,975.00 per month for 12 months, then $6,359.00 for 48 months.

13.    Among other provisions, the Plan proposes the following: Payment through the Trustee to Pentagon Federal Credit Union and Virginia Partners Credit Union for mortgage arrearages, Vistas at Windsor Hills Townhomes and Windsor Hills Master Community for HOA dues, the Internal Revenue Service for income taxes, local taxes, and to unsecured creditors a seventy percent (70%) for joint creditors, and five percent (5%) for other creditors.

**Discussion**

14.    Because the instant case was commenced within one (1) year of the dismissal of the prior case, the automatic stay in the instant case will expire "with respect to any action taken with respect to a debt or property securing such debt or with respect to any lease . . . " unless the Court extends the automatic stay. 11 U.S.C. § 362(c)(3)(A) and (B).

15.    Pursuant to 11 U.S.C. § 362(c)(3)(B), Debtors must demonstrate to the Court that the instant case was filed in good faith in order to obtain an extension of the automatic stay.

16. If the Court finds grounds for presuming the instant case was filed "not in good faith," § 362(c)(3)(C) would impose a burden on Debtors to overcome such presumption and prove good faith by clear and convincing evidence. If, however, the Court finds no grounds for presuming the instant case was filed "not in good faith," Debtors must merely prove good faith by a preponderance of the evidence. In re Havner, 336 B.R. 98, 103 (Bankr. M.D.N.C. 2006); In re Ball, 336 B.R. 268, 273 (Bankr. M.D.N.C. 2006).

17. Within the context of motions to continue the automatic stay pursuant to § 362(c)(3), In re Chaney, 362 B.R. 690, 694 (Bankr. E.D. Va. 2007), instructs that the term "good faith" was defined judicially in the Fourth Circuit by Deans v. O'Donnell, 692 F.2d 968, 972 (4th Cir. 1982), further refined by Neufeld v. Freeman, 794 F.2d 149, 152 (4th Cir. 1986), and left unchanged by Congress when it created § 362(c)(3). Chaney at 694.

18. Pursuant to Neufeld v. Freeman, good faith determinations require courts to consider, *inter alia*, "the percentage of proposed repayment, the debtor's financial situation, the period of time payment will be made, the debtor's employment history and prospects, the nature and amount of unsecured claims, the debtor's past bankruptcy filings, the debtor's honesty in representing facts, and any unusual or exceptional problems facing the particular debtor." Id. at 152, *citing* Deans v. O'Donnell, 692 F.2d at 972. The focus of the inquiry is "to determine whether or not . . . there has been 'an abuse of the provisions, purpose, or spirit' of Chapter 13 in the proposal or plan." Neufeld at 152, *citing* Deans at 972, and *quoting* 9 Collier on Bankruptcy 9.20 at 319 (14th ed. 1978).

19. In order to apply the Fourth Circuit's definition of good faith in determining whether the automatic stay should be extended pursuant to § 362(c)(3), "the court must be satisfied that the plan in the new case will succeed where the plan in the prior case did not. Usually this will

6

require a finding that some change in the financial or personal affairs of the debtor has occurred

that will allow the debtor to perform under the terms of the plan in the new case. But the inquiry

does not end there. The court needs to determine that the repetitive filing does not violate the spirit

of the Bankruptcy Code. The new case must not be a ploy to frustrate creditors. It must represent

a sincere effort on the part of the debtor to advance the goals and purposes of chapter 13." Chaney

at 694.

### Argument

20.    In the case *sub judice* there is a presumption that the instant case was filed "not in

good faith" as to all creditors. Therefore, Debtors must prove by clear and convincing evidence

that the instant case was filed in good faith.

21.    In the instant case, the Debtors have acted in good faith, and Debtors request that

the Court grant an imposition and extension of the automatic stay as to all creditors, as to Debtors

and the Debtors' property, and as to the property of the estate for the duration of the instant case.

In support thereof, Debtors submit an Affidavit, which is attached hereto as Exhibit "1" and

incorporated herein by this reference.

22.    Applying the Neufeld factors to Debtor's circumstances and to this case leads to

the following conclusions:

a.    *Percentage of proposed repayment* - The Plan proposes to pay a dividend of 70%

to joint creditors and 2% to all other non-priority unsecured creditors. Such creditors would receive

a dividend of 0% if Debtors were to file a Chapter 7 bankruptcy case.  Application of this factor

favors a finding of good faith.

b.    *Debtors' financial situation* – Mr. Nicotera has a full-time job in Information

Technology with Cask NX, LLC and Mrs. Nicotera's her own business.  In addition, the Debtors

7

also have income from Mr. Nicotera's business as well as rental income. Application of this factor favors a finding of good faith.

c.     *Period of time payment will be made* - The period of time in which payments will be made is reasonable and is based upon the Debtor's best efforts. Application of this factor favors a finding of good faith.

d.     *Debtor's employment history and prospects* – Mr. Nicotera has a full-time job in Information Technology with Cask NX, LLC and Mrs. Nicotera's her own business.  In addition, the Debtors also have income from Mr. Nicotera's business as well as rental income.  Application of this factor favors a finding of good faith.

e.     *Nature and amount of unsecured claims* – The Debtors' Schedule F non-priority unsecured debts are estimated to be approximately $415,025.00.  The Debtors has not incurred any unsecured debt for luxury goods or services or any unsecured debt due to revolving credit accounts or pay day loans within the 90 days prior to filing the instant case.  Application of this factor favors a finding of good faith.

f.     *Debtor's past bankruptcy filings* - The instant Motion is required due to the fact that the Debtor's previous case that was dismissed within one (1) year of the Filing Date hereof. The Affidavit attached hereto as Exhibit "1" describes fully the reasons that the previous case was dismissed.  Debtor incorporates such explanation herein by this reference. Debtor's hardships do not indicate an abuse of the bankruptcy system; rather, they indicate an honest but thus far unsuccessful attempt to financially reorganize. Application of this factor favors a finding of good faith.

g.     *Debtor's honesty in representing facts* – Debtors have fully disclosed all assets, liabilities, and pertinent information regarding personal and financial affairs and is prepared to

cooperate fully with the Chapter 13 Trustee. Application of this factor favors a finding of good faith.

      h.     *Any unusual or exceptional problems facing the particular debtors* – There are no unusual or exceptional problems facing Debtors. Application of this factor favors a finding of good faith.

      23.     Debtors assert that the instant case does not "violate the spirit of the Bankruptcy Code" and it is not "a ploy to frustrate creditors"; rather, it represents "a sincere effort on the part of the debtor to advance the goals and purposes of chapter 13". *See* <u>Chaney</u> at 694. In support hereof, the Debtors assert the following additional arguments:

      a.     *The timing of the petition* – Between the dismissal of the previous case and the instant case, Debtors did not act in a manner so as to purposely delay payment of debts and did not delay in filing the instant case so as to intentionally frustrate creditors.  Debtors' actions in this regard indicate an intent to use the bankruptcy system to resolve debts in an appropriate manner. Application of this factor favors a finding of good faith.

      b.     *How the debt(s) arose* – The debts in this case arose primarily over a period of time extending back several years. The debts were not the result of misuse of credit or luxury spending; rather, they arose as a result of ordinary living expenses that Debtors became unable to repay. Application of this factor favors a finding of good faith.

      c.     *The debtor's motive in filing the petition* – Debtors' motive in filing this case is to apply best efforts to repay creditors and receive a fresh start through bankruptcy. Application of this factor favors a finding of good faith.

      d.     *How the debtor's actions affected creditors* – The Plan provisions and treatment of creditors are generally described in paragraph 7, *supra*. This factor will rarely favor a debtor,

because "[f]iling for bankruptcy relief will almost always prejudice one's creditors." <u>Galanis</u>, 334 B.R. at 696.

   e.  *Changes in circumstance and ability to complete this case* – The Affidavit attached hereto as Exhibit "1" describes fully the Debtors' changes in circumstances and explain both the legitimate bases for the filing of this case as well as the Debtors' ability to complete this case. Debtors incorporate such explanations herein by this reference. Application of this factor favors a finding of good faith.

   WHEREFORE, the Debtors, Joseph Anthony Nicotera and Carolyn Marie Nicotera, respectfully request this Honorable Court to enter an Order imposing the automatic stay as to all creditors as to Joseph Anthony Nicotera, and extending the automatic stay as to Carolyn Marie Nicotera, and as to the property of the estate of the Debtors, for the duration of the instant case, and for such other and further relief as to the Court shall be deemed appropriate.

       Respectfully submitted,

       JOSEPH ANTHONY NICOTERA
       CAROLYN MARIE NICOTERA
       By Counsel


       /s/ James E. Kane
       James E. Kane (VSB# 30081)
       KANE & PAPA, P.C.
       P. O. Box 508
       Richmond, Virginia 23218-0508
       Telephone (804) 225-9500
       *Counsel for Debtors*

### **CERTIFICATE OF SERVICE**

I certify that on April 27, 2020, I have transmitted a true copy of the foregoing document electronically through the Court's CM/ECF system or by mail to the Debtors, Chapter 13 trustee, the United States trustee if other than by the electronic means provided for at Local Bankruptcy Rule 2002-1, all attorneys appearing in the previous case as listed below, and to all creditors and parties in interest of the mailing matrix attached hereto.

/s/ James E. Kane
Counsel for Debtors

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**
Richmond Division

| | |
|---|---|
| IN RE: | ) |
| | ) |
| JOSEPH ANTHONY NICOTERA | )    Case No. 20-31700-KLP |
| CAROLYN MARIE NICOTERA | )    Chapter 13 |
| | ) |
| Debtors | ) |

## AFFIDAVIT OF JOSEPH ANTHONY NICOTERA AND CAROLYN MARIE NICOTERA

BEFORE ME, the undersigned authority, personally appeared Joseph Anthony Nicotera and Carolyn Marie Nicotera, known to me, and upon oaths, stated as follows:

1.      Our names are Joseph Anthony Nicotera and Carolyn Marie Nicotera.  We are above the age of 18 years, and competent to make this affidavit.

2.      We have personal knowledge of the facts set forth in this affidavit.

3.      We reside at 1415 Heatherstone Drive, Fredericksburg, VA 22407.

4.      Mr. Nicotera has a full-time job in Information Technology with Cask NX, LLC and Mrs. Nicotera operates her own business.  In addition to the aforementioned earned income, we have rental income.  We are the Debtors in the present bankruptcy case.

5.      Within the year prior to filing the initial case, Joseph Anthony Nicotera was a debtor in two (2) pending Chapter 13 bankruptcy cases which were dismissed, a Chapter 13 case filed on June 12, 2019 and dismissed on or about September 25, 2019 (Case No. 19-33126) ("First Case") and a Chapter 13 case filed on November 8, 2019 and dismissed on or about March 31, 2020 (Case No. 19-35903) ("Second Case").

6.      Within the year prior to filing the initial case, Carolyn Marie Nicotera was a co-debtor in the First Case.

12

7.     The First Case was dismissed on the Chapter 13 Trustee's Motion due to delinquent payments.  Prior to filing the First Case, Mr. Nicotera was employed by a Federal government contractor.   During that time we had worked out mortgage payment arrangements with our mortgage companies, with plans to be caught up during the first quarter of 2019.  Unfortunately Mr. Nicotera was furloughed from his job in December 2018 and he had no income available for several weeks after the furlough. This resulted in us not being able to continue the payment arrangements we had made with our mortgage companies. We researched various forbearance/loss mitigation opportunities with the various mortgage companies, but we were not successful in securing one, with the exception of US Bank.  At the time of the filing of the First Case, we were under the belief that Mr. Nicotera's furlough was temporary and he would start work in a relatively short time.  Unfortunately the furlough was not temporary and Mr. Nicotera was not re-hired, and he had to rely on his own business for income.  In addition, Mr. Nicotera's prior employer had failed to pay him his final paycheck in excess of $10,000, causing us further financial hardship.

8.     Upon filing the First Case, we were instructed by the Trustee to use TFS (as the preferred method) to make Trustee payments.  We experienced account set-up issues with the TFS platform and requested help from our counsel, who instructed us to contact the TFS Help Desk, which we did.  After several days, the Help Desk finally responded to us and we thought we had resolved the payment issue, so we remitted the required payment.  This issue, coupled with the fact we had little to no liquid funds on hand (due to Mr. Nicotera's job loss) to meet all of our financial obligations, made it very challenging to make the initial and subsequent Trustee payments.  Prior to the hearing on the Motion to Dismiss the First Case, we provided our counsel with proof the payment was submitted via TFS, but counsel informed us the this evidence was insufficient to the Court at the hearing, and the case was dismissed.

9.       Since the dismissal of the First Case, Mrs. Nicotera's business was starting to gain traction and generate income, but not enough to carry the family while Mr. Nicotera was seeking work.  After Mr. Nicotera was furloughed he continued to job hunt and re-engage work with his company, Strategic Business Solutions. Because of the furlough and that the work he does is primarily Federal contracting, the job/contracting environment was a bit tight at that time, and good solid consistent workflow was difficult to find and maintain. But the opportunities for Mr. Nicotera were starting to come in the form of solid commitments from contractors/employers. Going into the Second Case, he was starting to get positioned to be able to meet all of his financial obligations, including payment to the Trustee.  That being said, it took longer than expected for Mr. Nicotera to being receiving payments from his clients.  And, this once again, put a strain on our finances. In order to meet our financial obligations, we reached out to family members for assistance until Mr. Nicotera's work situation improved to the point of being fully sustainable on his own.

10.      After the First Case was dismissed, we had no intention or interest in refiling a bankruptcy petition. We made the decision to try and work out payment arrangements with our various creditors, including the IRS and the Virginia Department of Taxation. With respect to the mortgages, we worked with US Bank and Pentagon Federal Credit Union on loan modifications for each of the respective loans.  However, we were unsuccessful in securing a working agreement with Virginia Partners Bank.  While we did have two potential resources to help us pay off the Virginia Partners Bank arrearage or the note in its entirety, we needed additional time to do so. We contacted Virginia Partners Bank and informed them of this possibility. However, given how close the foreclosure date was, the Debtors were concerned Virginia Partners Bank may run out the clock and proceed with the foreclosure. Mr. Nicotera personally went to Virginia Partners Bank

to plead for additional time. When he showed up, he was not able to speak with the representative handling our loan.  Because of this situation, we were left with three choices, find money to pay off the note that was being called (approximately $108,000 if we were permitted time to do so), accept the foreclosure, or refile for bankruptcy. Despite our efforts, Virginia Partners Bank would not allow the Debtors additional time to enough time to put together the funds to pay off the note (or pay back the arrearage amount), and proceeded with the foreclosure.  Once this was understood, we contacted legal counsel to start the refiling for Chapter 13 bankruptcy.  As stated previously, we did not want to re-file for Chapter 13 as we had spent hours and days working with our creditors to make reasonable payment arrangements to avoid refiling. Virginia Partners Bank was the only creditor not willing to give us the time we needed.  It was Virginia Partner's initiation of foreclosure proceedings that necessitated the filing of the Second Case.

11.    The Second Case was dismissed due to failure to commence payments.  I, Mr. Nicotera, did mail the first payment to the lock-box in Tennessee per the instructions I received from my attorney. The first payment was submitted close to the deadline due to a change in the amount of the payment due, which was presented to me a day or two prior to the due date. While I was able to make the first payment, I was unsure about my ability to make subsequent payments due to the fact my payment amount increased (and was possibly going to increase again). This situation, coupled with my paycheck issue cited previously, delayed my ability to make the next two payments.

12.    Since the dismissal of the Second Case, Mr. Nicotera has secured a full-time job (which is part of a 5 year contract) in Information Technology with Cask NX, LLC and Mrs. Nicotera's business is profitable and successfully growing.  In addition, we also have income from Mr. Nicotera's business as well as rental income.  Now that our financial situation has improved,

we are confident that we can meet our regular payments and the Trustee payments in this case.  In addition, the Debtors have already made their first payment in this case, and future payments will be made via a wage deduction from Mr. Nicotera's employer.

13.    We have listed all of our assets and all of our debts and have fully and accurately disclosed all of our income and expenses in the Schedules in this case.

14.    In the instant case, we have proposed a Chapter 13 Plan (the "Plan") that commits to pay the Trustee all projected disposable income, $2,975.00 per month for 12 months, then $6,359.00 for 48 months.  Among other provisions, the Plan proposes the following: Payment through the Trustee to Pentagon Federal Credit Union and Virginia Partners Bank for mortgage arrearages, Vistas at Windsor Hills Townhomes and Windsor Hills Master Community for HOA dues, the Internal Revenue Service for income taxes, local taxes, and to unsecured creditors a seventy percent (70%) for joint creditors, and five percent (5%) for other creditors.

15.    After the dismissal of my previous case, we acted as fast as we reasonably could to retain a bankruptcy attorney to file this case for me because we want to use the bankruptcy system to resolve our debts.

16.    Our debts arose as a result of ordinary living expenses. The debts we have accumulated over several years and are not the result of any purchases of luxury goods or services.

17.    We have also not incurred any unsecured debt due to revolving credit accounts or pay day loans within the 90 days prior to filing the instant case.

18.    We desire to use the bankruptcy system to obtain a fresh start and have not been attempting to evade our responsibilities or delay our creditors' attempts to collect.

19.    Our income is consistent and likely to remain so during this case.  Our household

expenses are not likely to change substantially.  We believe we will be able to make our payments

to the Trustee and meet our other obligations as they come due throughout this case.

WITNESS the following signatures and seals.

/s/ Joseph Antony Nicotera
JOSEPH ANTHONY NICOTERA

State of Virginia; to wit:

The foregoing instrument was acknowledged before me on April 23, 2020, by JOSEPH
ANTHONY NICOTERA.

/s/ Timothy David Watts
Notary Public

My Commission Expires: December 31, 2022
Notary Registration Number:  7766992

17

/s/ Carolyn Marie Nicotera
CAROLYN MARIE NICOTERA


State of Virginia; to wit:

The foregoing instrument was acknowledged before me on April 23, 2020, by CAROLYN MARIE NICOTERA
.

/s/ Timothy David Watts
Notary Public


My Commission Expires: December 31, 2022
Notary Registration Number:  7766992

18

AES/FED
PO Box 2461
Harrisburg, PA 17106


Aura Zelada
1631 East Vine St. Ste. 300
Kissimmee, FL 34744


Bank of America
Attn: Bankruptcy
P.O. 982284
El Paso, TX 79998


C. Conrad c/o Jason Pelt
2052 Jefferson Davis Highway
Suite 201
Stafford, VA 22554


Cavalry Portfolio Services
500 Summit Lake
Suite 400
Valhalla, NY 10595


David Murphy
40 Carousel Dr.
Portland, CT 06480


Don Southern
c/o Goodall, Pelt, Carper
1259 Courthouse Road
Stafford, VA 22554


ECMC Group
Attn: Bankruptcy
111 Washington Ave South, Ste 1400
Minneapolis, MN 55401


EduCap Inc.
Attn: Bankruptcy
PO Box 82522
Lincoln, NE 68501


Fredericksburg Emergency Med
1001 Sam Perry Blvd
Fredericksburg, VA 22401

Internal Revenue Service
Centralized Insolvency Operati
P. O. Box 7346
Philadelphia, PA 19101-7346


John A. Nere, Jr., P.C.
806 Princess Anne St.
Fredericksburg, VA 22401


Kevin Fitzsimmons
11 Wheelwright LN
Stafford, VA 22554


Martin C. Conway
12934 Hardbor Dr. Ste. 107
Woodbridge, VA 22192


Mary Washington Hospital
1001 Sam Perry Blvd
Fredericksburg, VA 22401


OneMain Financial
Attn: Bankruptcy
Po Box 3251
Evansville, IN 47731


Pentagon Federal Cr Un
2930 Eisenhower Ave
Alexandria, VA 22314


Pentagon Federal Credit Union
Attn: Bankruptcy
Po Box 1432
Alexandria, VA 22313


Quantum3 Group, LLC
PO Box 788
Kirkland, WA 98083


Rafael Rivera
6114 Dory Landing Court
Burke, VA 22015

Shane A. Sims
PO Box 7166
Fredericksburg, VA 22404


Sharon Stuart, Esquire
8002 Discovery Drive, Ste. 422
Henrico, VA 23229


Southwest Credit Systems
4120 International Parkway
Suite 1100
Carrollton, TX 75007


Spotsylvania County Treasurer
9104 Courthouse Rd
Spotsylvania, VA 22553


US Bank Home Mortgage
4801 Frederica St.
Owensboro, KY 42301


US Department of Education
PO Box 105028
National Payment Center
Atlanta, GA 30348-5028


USAA Federal Savings Bank
Attn: Bankruptcy
10750 Mcdermott Freeway
San Antonio,, TX 78288


USAA Federal Savings Bank
Attn: Bankruptcy
10750 Mcdermott Freeway
San Antonio, TX 78288


Virginia Department of Taxatio
PO Box 2369
Richmond, VA 23218


Virginia Partners Credit Union
Po Box 8029
Fredericksburg, VA 22404

```
Vistas at Windsor Hills Townho
1631 East Vine St. Ste. 300
Kissimmee, FL 34744


Windsor Hills Master Community
1631 East Vine St., Ste. 300
Kissimmee, FL 34744
```