## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| JOSEPH ANTHONY NICOTERA | ) | Case No. 20−31700−KLP |
| CAROLYN MARIE NICOTERA | ) | Chapter 13 |
| | ) | |
| Debtors | ) | |

## <u>MOTION TO SELL REAL ESTATE</u>

COME NOW, the Debtors, by counsel, and as and for Debtors' Motion to Sell Real Estate, state as follows:

1.     The Debtors filed this case under Chapter 13 of the U.S. Bankruptcy Code on March 27, 2020.

2.     The Debtors are the owners of the real estate and improvements located at 7671 Otterspool St., Kissimmee, FL 34747, more particularly known as

> Unit 6, Building 7 of Windsor Hills, Phase Two, according to the official plat thereof as recorded in Plat Book 16, Pages 86-89 of the Public Records of Osceola County, Florida

(the "Property").

3.     Community Loan Servicing, LLC is a secured creditor which holds a first mortgage on the Property.   The approximate payoff balance on the note secured by said mortgage is $209,001.33.  In addition, the following liens and approximate balances exist against the Property: (i) Internal Revenue Service- $27,250.00; (ii) Windsor Hills Master Community

James E. Kane (VSB #30081)
KANE & PAPA, P.C.
1313 East Cary Street
Richmond, VA  23219
(804) 225-9500 (phone)
(804) 225-9598 (fax)
*Counsel for Debtors*

Association HOA- $12,000.00; and (iii) The Vistas at Windsor Hills Townhome HOA- $6,000.00.  The tax assessed value of the Property is $190,410.00.

4.      Debtors have entered into a contract ("Contract") for the sale of the Property for $295,000.00 to James and Tonya Ronneberg, which, upon closing of the same, will result in Community Loan Servicing, LLC releasing its deed of trust against the Property.  A copy of said contract is attached hereto as Exhibit "A" and incorporated herein by this reference ("Contract").

5.      After all fees and closing costs, the amount of the sale or loan proceeds to be applied to the Debtors' obligations under the confirmed plan is $12,400.00, which will not result in full payment of all allowed claims.

6.      The approximate amount of sales proceeds to be paid to the Debtors is $6,500.00 to reimburse Debtors for their rehabilitation of the Property.

7.      On July 14, 2021, or as soon thereafter as may be practicable, Debtors intend to sell their interest in the Property in accordance with the terms of the Contract.

WHEREFORE, the Debtors request that the Court enter an Order authorizing the sale of the Property in accordance with the terms of the Contract and for such other relief as the Court may deem appropriate

Dated:  June 9, 2021

JOSEPH ANTHONY NICOTERA
CAROLYN MARIE NICOTERA


By: /s/ James E. Kane
          Counsel

2

James E. Kane (VSB #30081)
KANE & PAPA, P.C.
1313 East Cary Street
Richmond, VA  23219
(804) 225-9500 (phone)
(804) 225-9598 (fax)
*Counsel for Debtors*

## CERTIFICATE OF SERVICE

I hereby certify that on June 9, 2021, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all parties registered to receive notice thereof, and I mailed a true and exact copy to the parties on the list attached hereto.

/s/ James E. Kane
Counsel for Debtors

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Richmond Division

| | |
|---|---|
| IN RE: ) | |
| ) | |
| JOSEPH ANTHONY NICOTERA ) | Case No. 20−31700−KLP |
| CAROLYN MARIE NICOTERA ) | Chapter 13 |
| ) | |
| Debtors ) | |

## NOTICE OF MOTION AND HEARING

The above Debtors have filed a Motion to Sell Real Estate with the Court.

<u>Your rights may be affected</u>.  You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case.  (If you do not have an attorney, you may wish to consult one).

Debtors are requesting to sell Debtors real estate known as 7671 Otterspool St, Kissimmee, FL 34747 to James and Tonya Ronneberg for $295,000.00.  The property is currently secured by a first mortgage with an approximate balance of $209,001.33, which balance is to be paid in full with the proceeds from the sale of the property.  The property is also encumbered by a federal tax lien in the approximate amount of $27,250.00 and HOA liens and balances in the approximate amounts of $12,000.00 and $6,000.00.  The amount of the proceeds to be applied to the Debtors' obligations under the confirmed plan in this case is $12,400.00, which will not result in full payment of all allowed claims in this case.  The amount of the proceeds from the sale to be paid to the Debtors is approximately $6,500.00 to be used for Debtors' reimbursement of rehabilitating the property prior to the sale.

If you do not want the court to grant the relief sought in the motion, or if you want the court to consider your views on the motion, then within twenty-one (21) days from the date of this Notice, you or your attorney must:

- File with the court, at the address shown below, a written request for a hearing [or written response pursuant to Local Bankruptcy Rule 9013-1(H)].  If you mail your request for a hearing (or response) to the court for filing, you must mail it early enough so the court will <u>receive</u> it on or before the date stated above, to:

> Clerk of Court
> United States Bankruptcy Court
> 701 East Broad Street
> Richmond, VA  23219

You must also mail a copy to:

        James E. Kane, Esquire
        KANE & PAPA, P.C.
        1313 East Cary Street
        Richmond, Virginia  23219

- Attend a hearing scheduled for **June 30, 2021 at 10:00 a.m. at U.S. Bankruptcy Court, 701 East Broad Street, Room 5100, Richmond, VA  23219**.  <u>If no timely response has been filed opposing the relief requested, the court may grant the relief without holding a hearing</u>.

If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the motion or objection and may enter an order granting that relief.

Dated:  June 9, 2021
           JOSEPH ANTHONY NICOTERA
           CAROLYN MARIE NICOTERA


           By: /s/ James E. Kane
               Counsel

James E. Kane (VSB #30081)
KANE & PAPA, P.C.
1313 East Cary Street
Richmond, VA  23219
(804) 225-9500 (phone)
(804) 225-9598 (fax)
*Counsel for Debtors*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 9, 2021, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all parties registered to receive notice thereof, and I mailed a true and exact copy to the parties on the list attached hereto.

           /s/ James E. Kane
           Counsel for Debtors

## "AS IS" Residential Contract For Sale And Purchase
**THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR**

 Florida Realtors®

1* **PARTIES:** _____ Joseph A & Caroline M Nicotera _____ ("Seller"),
2* and _____ James and Tonya Ronneberg _____ ("Buyer"),
3  agree that Seller shall sell and Buyer shall buy the following described Real Property and Personal Property
4  (collectively "Property") pursuant to the terms and conditions of this AS IS Residential Contract For Sale And Purchase
5  and any riders and addenda ("Contract"):
6  **1. PROPERTY DESCRIPTION:**
7*   (a) Street address, city, zip: _____ 7671 OTTERSPOOL STREET, KISSIMMEE, FL 34747 _____
8*   (b) Located in: _____ Osceola _____ County, Florida. Property Tax ID #: _____ 10-25-27-5482-0007-0060 _____
9*   (c) Real Property: The legal description is _____ WINDSOR HILLS PHASE TWO PB 16 PGS 86-89 BLDG 7 LOT 6 _____
10
11
12   together with all existing improvements and fixtures, including built-in appliances, built-in furnishings and
13   attached wall-to-wall carpeting and flooring ("Real Property") unless specifically excluded in Paragraph 1(e) or
14   by other terms of this Contract.
15   (d) Personal Property: Unless excluded in Paragraph 1(e) or by other terms of this Contract, the following items
16   which are owned by Seller and existing on the Property as of the date of the initial offer are included in the
17   purchase: range(s)/oven(s), refrigerator(s), dishwasher(s), disposal, ceiling fan(s), intercom, light fixture(s),
18   drapery rods and draperies, blinds, window treatments, smoke detector(s), garage door opener(s), security gate
19   and other access devices, and storm shutters/panels ("Personal Property").
20*  Other Personal Property items included in this purchase are: _____ Sold fully furnished per photos on MLS _____
21
22   Personal Property is included in the Purchase Price, has no contributory value, and shall be left for the Buyer.
23*  (e) The following items are excluded from the purchase: _____ see attachment _____
24

**PURCHASE PRICE AND CLOSING**

26* **2. PURCHASE PRICE** (U.S. currency):.............................................................................. $ _____ 295,000.00
27*  (a) Initial deposit to be held in escrow in the amount of **(checks subject to COLLECTION)** ....... $ _____ 3,000.00
28   The initial deposit made payable and delivered to "Escrow Agent" named below
29*  **(CHECK ONE):** (i) ☐ accompanies offer or (ii) ☒ is to be made within ___ 3 ___ (if left
30   blank, then 3) days after Effective Date. IF NEITHER BOX IS CHECKED, THEN
31   OPTION (ii) SHALL BE DEEMED SELECTED.
32*  Escrow Agent Information: Name: _____ Yaritza Logrono - Equitable Title _____
33*  Address: _____ 610 Sycamore St. Suite 190 Kissimmee, Florida 34747 _____
34*  Phone: _____ 407-566-0776 _____ E-mail: ylogrono@equitabletitle.com Fax: _____
35*  (b) Additional deposit to be delivered to Escrow Agent within _____ (if left blank, then 10)
36*  days after Effective Date ........................................................................$ _____
37   (All deposits paid or agreed to be paid, are collectively referred to as the "Deposit")
38*  (c) Financing: Express as a dollar amount or percentage ("Loan Amount") see Paragraph 8 ........ $147,000.00
39*  (d) Other: _____ ................ $ _____
40   (e) Balance to close (not including Buyer's closing costs, prepaids and prorations) by wire
41*  transfer or other **COLLECTED** funds ...........................................................$ _____ 145,000.00
42   NOTE: For the definition of "COLLECTION" or "COLLECTED" see STANDARD S.
43  **3. TIME FOR ACCEPTANCE OF OFFER AND COUNTER-OFFERS; EFFECTIVE DATE:**
44   (a) If not signed by Buyer and Seller, and an executed copy delivered to all parties on or before
45*  _____ by 5pm June 7, 2021 _____, this offer shall be deemed withdrawn and the Deposit, if any, shall be returned to
46   Buyer. Unless otherwise stated, time for acceptance of any counter-offers shall be within 2 days after the day
47   the counter-offer is delivered.
48   (b) The effective date of this Contract shall be the date when the last one of the Buyer and Seller has signed or
49   initialed and delivered this offer or final counter-offer ("Effective Date").
50  **4. CLOSING DATE:** Unless modified by other provisions of this Contract, the closing of this transaction shall occur
51   and the closing documents required to be furnished by each party pursuant to this Contract shall be delivered
52*  ("Closing") on _____ or before July 14, 2021 _____ ("Closing Date"), at the time established by the Closing Agent.

JAN        CMN

Buyer's Initials _____         Page 1 of 12         Seller's Initials _____
FloridaRealtors/FloridaBar-ASIS-5x    Rev.6/19 © 2017 Florida Realtors® and The Florida Bar. All rights reserved.
Serial#: 054833-000162-3014760

Form Simplicity

**5. EXTENSION OF CLOSING DATE:**

(a) If Paragraph 8(b) is checked and Closing funds from Buyer's lender(s) are not available on Closing Date due to Consumer Financial Protection Bureau Closing Disclosure delivery requirements ("CFPB Requirements"), then Closing Date shall be extended for such period necessary to satisfy CFPB Requirements, provided such period shall not exceed 10 days.

(b) If an event constituting "Force Majeure" causes services essential for Closing to be unavailable, including the unavailability of utilities or issuance of hazard, wind, flood or homeowners' insurance, Closing Date shall be extended as provided in STANDARD G.

**6. OCCUPANCY AND POSSESSION:**

(a) Unless the box in Paragraph 6(b) is checked, Seller shall, at Closing, deliver occupancy and possession of the Property to Buyer free of tenants, occupants and future tenancies. Also, at Closing, Seller shall have removed all personal items and trash from the Property and shall deliver all keys, garage door openers, access devices and codes, as applicable, to Buyer. If occupancy is to be delivered before Closing, Buyer assumes all risks of loss to the Property from date of occupancy, shall be responsible and liable for maintenance from that date, and shall be deemed to have accepted the Property in its existing condition as of time of taking occupancy.

(b) ☐ **CHECK IF PROPERTY IS SUBJECT TO LEASE(S) OR OCCUPANCY AFTER CLOSING.** If Property is subject to a lease(s) after Closing or is intended to be rented or occupied by third parties beyond Closing, the facts and terms thereof shall be disclosed in writing by Seller to Buyer and copies of the written lease(s) shall be delivered to Buyer, all within 5 days after Effective Date. If Buyer determines, in Buyer's sole discretion, that the lease(s) or terms of occupancy are not acceptable to Buyer, Buyer may terminate this Contract by delivery of written notice of such election to Seller within 5 days after receipt of the above items from Seller, and Buyer shall be refunded the Deposit thereby releasing Buyer and Seller from all further obligations under this Contract. Estoppel Letter(s) and Seller's affidavit shall be provided pursuant to STANDARD D. If Property is intended to be occupied by Seller after Closing, see Rider U. POST-CLOSING OCCUPANCY BY SELLER.

**7. ASSIGNABILITY: (CHECK ONE):** Buyer ☐ may assign and thereby be released from any further liability under this Contract; ☐ may assign but not be released from liability under this Contract; or ☒ may not assign this Contract.

**FINANCING**

**8. FINANCING:**

☐ (a) Buyer will pay cash for the purchase of the Property at Closing. There is no financing contingency to Buyer's obligation to close. If Buyer obtains a loan for any part of the Purchase Price of the Property, Buyer acknowledges that any terms and conditions imposed by Buyer's lender(s) or by CFPB Requirements shall not affect or extend the Buyer's obligation to close or otherwise affect any terms or conditions of this Contract.

☒ (b) This Contract is contingent upon Buyer obtaining approval of a ☒ conventional ☐ FHA ☐ VA or ☐ other _____ (describe) loan within _____ (if left blank, then 30) days after Effective Date ("Loan Approval Period") for **(CHECK ONE):** ☐ fixed, ☐ adjustable, ☒ fixed or adjustable rate in the Loan Amount (See Paragraph 2(c)), at an initial interest rate not to exceed _____ % (if left blank, then prevailing rate based upon Buyer's creditworthiness), and for a term of _____ (if left blank, then 30) years ("Financing").

(i) Buyer shall make mortgage loan application for the Financing within _____ (if left blank, then 5) days after Effective Date and use good faith and diligent effort to obtain approval of a loan meeting the Financing terms ("Loan Approval") and thereafter to close this Contract. Loan Approval which requires a condition related to the sale by Buyer of other property shall not be deemed Loan Approval for purposes of this subparagraph.

Buyer's failure to use diligent effort to obtain Loan Approval during the Loan Approval Period shall be considered a default under the terms of this Contract.  For purposes of this provision, "diligent effort" includes, but is not limited to, timely furnishing all documents and information and paying of all fees and charges requested by Buyer's mortgage broker and lender in connection with Buyer's mortgage loan application.

(ii) Buyer shall keep Seller and Broker fully informed about the status of Buyer's mortgage loan application, Loan Approval, and loan processing and authorizes Buyer's mortgage broker, lender, and Closing Agent to disclose such status and progress, and release preliminary and finally executed closing disclosures and settlement statements, to Seller and Broker.

(iii) Upon Buyer obtaining Loan Approval, Buyer shall promptly deliver written notice of such approval to Seller.

(iv) If Buyer is unable to obtain Loan Approval after the exercise of diligent effort, then at any time prior to expiration of the Loan Approval Period, Buyer may provide written notice to Seller stating that Buyer has been unable to obtain Loan Approval and has elected to either:

(1) waive Loan Approval, in which event this Contract will continue as if Loan Approval had been obtained; or

(2) terminate this Contract.

Form
Simplicity

109  (v) If Buyer fails to timely deliver either provided in Paragraph 8(b)(iii) or (iv), above, to Seller prior to
110  expiration of the Loan Approval Period, then Loan Approval shall be deemed waived, in which event this Contract
111  will continue as if Loan Approval had been obtained, provided however, Seller may elect to terminate this Contract
112  by delivering written notice to Buyer within 3 days after expiration of the Loan Approval Period.

113  (vi) If this Contract is timely terminated as provided by Paragraph 8(b)(iv)(2) or (v), above, and Buyer is not in
114  default under the terms of this Contract, Buyer shall be refunded the Deposit thereby releasing Buyer and Seller
115  from all further obligations under this Contract.

116  (vii) If Loan Approval has been obtained, or deemed to have been obtained, as provided above, and Buyer
117  fails to close this Contract, then the Deposit shall be paid to Seller unless failure to close is due to: (1) Seller's
118  default or inability to satisfy other contingencies of this Contract; (2) Property related conditions of the Loan Approval
119  have not been met (except when such conditions are waived by other provisions of this Contract); or (3) appraisal
120  of the Property obtained by Buyer's lender is insufficient to meet terms of the Loan Approval, in which event(s) the
121  Buyer shall be refunded the Deposit, thereby releasing Buyer and Seller from all further obligations under this
122  Contract.

123*  ☐ (c) Assumption of existing mortgage (see rider for terms).
124*  ☐ (d) Purchase money note and mortgage to Seller (see riders; addenda; or special clauses for terms).

125  **CLOSING COSTS, FEES AND CHARGES**

126  **9. CLOSING COSTS; TITLE INSURANCE; SURVEY; HOME WARRANTY; SPECIAL ASSESSMENTS:**
127  (a) **COSTS TO BE PAID BY SELLER:**
128  • Documentary stamp taxes and surtax on deed, if any  • HOA/Condominium Association estoppel fees
129  • Owner's Policy and Charges (if Paragraph 9(c)(i) is checked)  • Recording and other fees needed to cure title
130  • Title search charges (if Paragraph 9(c)(iii) is checked)  • Seller's attorneys' fees
131*  • Municipal lien search (if Paragraph 9(c)(i) or (iii) is checked)  • Other:_____
132  If, prior to Closing, Seller is unable to meet the AS IS Maintenance Requirement as required by Paragraph 11
133  a sum equal to 125% of estimated costs to meet the AS IS Maintenance Requirement shall be escrowed at
134  Closing. If actual costs to meet the AS IS Maintenance Requirement exceed escrowed amount, Seller shall pay
135  such actual costs. Any unused portion of escrowed amount(s) shall be returned to Seller.

136  (b) **COSTS TO BE PAID BY BUYER:**
137  • Taxes and recording fees on notes and mortgages  • Loan expenses
138  • Recording fees for deed and financing statements  • Appraisal fees
139  • Owner's Policy and Charges (if Paragraph 9(c)(ii) is checked)  • Buyer's Inspections
140  • Survey (and elevation certification, if required)  • Buyer's attorneys' fees
141  • Lender's title policy and endorsements  • All property related insurance
142  • HOA/Condominium Association application/transfer fees  • Owner's Policy Premium (if Paragraph
143  • Municipal lien search (if Paragraph 9(c)(ii) is checked)     9 (c)(iii) is checked.)
144*  • Other:_____ $395 La Rosa Realty Transaction Cost

145*  (c) **TITLE EVIDENCE AND INSURANCE:** At least _____ (if left blank, then 15, or if Paragraph 8(a) is checked,
146  then 5) days prior to Closing Date ("Title Evidence Deadline"), a title insurance commitment issued by a Florida
147  licensed title insurer, with legible copies of instruments listed as exceptions attached thereto ("Title
148  Commitment") and, after Closing, an owner's policy of title insurance (see STANDARD A for terms) shall be
149  obtained and delivered to Buyer. If Seller has an owner's policy of title insurance covering the Real Property, a
150  copy shall be furnished to Buyer and Closing Agent within 5 days after Effective Date. The owner's title policy
151  premium, title search and closing services (collectively, "Owner's Policy and Charges") shall be paid, as set
152  forth below. The title insurance premium charges for the owner's policy and any lender's policy will be calculated
153  and allocated in accordance with Florida law, but may be reported differently on certain federally mandated
154  closing disclosures and other closing documents. For purposes of this Contract "municipal lien search" means a
155  search of records necessary for the owner's policy of title insurance to be issued without exception for unrecorded
156  liens imposed pursuant to Chapters 159 or 170, F.S., in favor of any governmental body, authority or agency.
157  **(CHECK ONE):**
158*  ☒ (i) Seller shall designate Closing Agent and pay for Owner's Policy and Charges, and Buyer shall pay the
159  premium for Buyer's lender's policy and charges for closing services related to the lender's policy,
160  endorsements and loan closing, which amounts shall be paid by Buyer to Closing Agent or such other
161  provider(s) as Buyer may select; or
162*  ☐ (ii) Buyer shall designate Closing Agent and pay for Owner's Policy and Charges and charges for closing
163  services related to Buyer's lender's policy, endorsements and loan closing; or



Buyer's Initials _____  _____   Page **3** of **12**   Seller's Initials ___JAN___  ___CMN___
FloridaRealtors/FloridaBar-ASIS-5x   Rev.6/19 © 2017 Florida Realtors® and The Florida Bar. All rights reserved.

Serial#: 054833-000162-3014760

Form
Simplicity

164*     ☐ (iii) **[MIAMI-DADE/BROWARD REGIONAL PROVISION]:** Seller shall furnish a copy of a prior owner's policy
165     of title insurance or other evidence of title and pay fees for: (A) a continuation or update of such title evidence,
166     which is acceptable to Buyer's title insurance underwriter for reissue of coverage; (B) tax search; and (C)
167     municipal lien search. Buyer shall obtain and pay for post-Closing continuation and premium for Buyer's owner's
168*     policy, and if applicable, Buyer's lender's policy. Seller shall not be obligated to pay more than $_____
169     (if left blank, then $200.00) for abstract continuation or title search ordered or performed by Closing Agent.

170   (d) **SURVEY:** On or before Title Evidence Deadline, Buyer may, at Buyer's expense, have the Real Property
171     surveyed and certified by a registered Florida surveyor ("Survey"). If Seller has a survey covering the Real
172     Property, a copy shall be furnished to Buyer and Closing Agent within 5 days after Effective Date.

173*   (e) **HOME WARRANTY:** At Closing, ☐ Buyer ☐ Seller ☒ N/A shall pay for a home warranty plan issued by
174*     _____ at a cost not to exceed $_____. A home
175     warranty plan provides for repair or replacement of many of a home's mechanical systems and major built-in
176     appliances in the event of breakdown due to normal wear and tear during the agreement's warranty period.

177   (f) **SPECIAL ASSESSMENTS:** At Closing, Seller shall pay: (i) the full amount of liens imposed by a public body
178     ("public body" does not include a Condominium or Homeowner's Association) that are certified, confirmed and
179     ratified before Closing; and (ii) the amount of the public body's most recent estimate or assessment for an
180     improvement which is substantially complete as of Effective Date, but that has not resulted in a lien being
181     imposed on the Property before Closing. Buyer shall pay all other assessments. If special assessments may
182     be paid in installments **(CHECK ONE):**
183*     ☐ (a) Seller shall pay installments due prior to Closing and Buyer shall pay installments due after Closing.
184     Installments prepaid or due for the year of Closing shall be prorated.
185*     ☒ (b) Seller shall pay the assessment(s) in full prior to or at the time of Closing.
186     IF NEITHER BOX IS CHECKED, THEN OPTION (a) SHALL BE DEEMED SELECTED.
187     This Paragraph 9(f) shall not apply to a special benefit tax lien imposed by a community development district
188     (CDD) pursuant to Chapter 190, F.S., which lien shall be prorated pursuant to STANDARD K.

189                                                    **DISCLOSURES**

190 **10. DISCLOSURES:**
191   (a) **RADON GAS:** Radon is a naturally occurring radioactive gas that, when it is accumulated in a building in
192     sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that
193     exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding
194     radon and radon testing may be obtained from your county health department.

195   (b) **PERMITS DISCLOSURE:** Except as may have been disclosed by Seller to Buyer in a written disclosure, Seller
196     does not know of any improvements made to the Property which were made without required permits or made
197     pursuant to permits which have not been properly closed. If Seller identifies permits which have not been
198     properly closed or improvements which were not permitted, then Seller shall promptly deliver to Buyer all plans,
199     written documentation or other information in Seller's possession, knowledge, or control relating to
200     improvements to the Property which are the subject of such open permits or unpermitted improvements.

201   (c) **MOLD:** Mold is naturally occurring and may cause health risks or damage to property. If Buyer is concerned or
202     desires additional information regarding mold, Buyer should contact an appropriate professional.

203   (d) **FLOOD ZONE; ELEVATION CERTIFICATION:** Buyer is advised to verify by elevation certificate which flood
204     zone the Property is in, whether flood insurance is required by Buyer's lender, and what restrictions apply to
205     improving the Property and rebuilding in the event of casualty. If Property is in a "Special Flood Hazard Area"
206     or "Coastal Barrier Resources Act" designated area or otherwise protected area identified by the U.S. Fish and
207     Wildlife Service under the Coastal Barrier Resources Act and the lowest floor elevation for the building(s) and/or
208     flood insurance rating purposes is below minimum flood elevation or is ineligible for flood insurance coverage
209     through the National Flood Insurance Program or private flood insurance as defined in 42 U.S.C. §4012a, Buyer
210*     may terminate this Contract by delivering written notice to Seller within _____ (if left blank, then 20) days after
211     Effective Date, and Buyer shall be refunded the Deposit thereby releasing Buyer and Seller from all further
212     obligations under this Contract, failing which Buyer accepts existing elevation of buildings and flood zone
213     designation of Property. The National Flood Insurance Program may assess additional fees or adjust premiums
214     for pre-Flood Insurance Rate Map (pre-FIRM) non-primary structures (residential structures in which the insured
215     or spouse does not reside for at least 50% of the year) and an elevation certificate may be required for actuarial
216     rating.

217   (e) **ENERGY BROCHURE:** Buyer acknowledges receipt of Florida Energy-Efficiency Rating Information Brochure
218     required by Section 553.996, F.S.

Serial#: 054833-000162-3014760

Form Simplicity

DocuSign Envelope ID: 35D3BE55-9D58-45CD-9706-7DFFAAB53F43

219 (f) **LEAD-BASED PAINT:** If Property includes pre-1978 residential housing, a lead-based paint disclosure is
220 mandatory.

221 (g) **HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE: BUYER SHOULD NOT EXECUTE THIS**
222 **CONTRACT UNTIL BUYER HAS RECEIVED AND READ THE HOMEOWNERS'**
223 **ASSOCIATION/COMMUNITY DISCLOSURE, IF APPLICABLE.**

224 (h) **PROPERTY TAX DISCLOSURE SUMMARY:** BUYER SHOULD NOT RELY ON THE SELLER'S CURRENT
225 PROPERTY TAXES AS THE AMOUNT OF PROPERTY TAXES THAT THE BUYER MAY BE OBLIGATED TO
226 PAY IN THE YEAR SUBSEQUENT TO PURCHASE. A CHANGE OF OWNERSHIP OR PROPERTY
227 IMPROVEMENTS TRIGGERS REASSESSMENTS OF THE PROPERTY THAT COULD RESULT IN HIGHER
228 PROPERTY TAXES. IF YOU HAVE ANY QUESTIONS CONCERNING VALUATION, CONTACT THE
229 COUNTY PROPERTY APPRAISER'S OFFICE FOR INFORMATION.

230 (i) **FOREIGN INVESTMENT IN REAL PROPERTY TAX ACT ("FIRPTA"):** Seller shall inform Buyer in writing if
231 Seller is a "foreign person" as defined by the Foreign Investment in Real Property Tax Act ("FIRPTA"). Buyer
232 and Seller shall comply with FIRPTA, which may require Seller to provide additional cash at Closing. If Seller
233 is not a "foreign person", Seller can provide Buyer, at or prior to Closing, a certification of non-foreign status,
234 under penalties of perjury, to inform Buyer and Closing Agent that no withholding is required. See STANDARD
235 V for further information pertaining to FIRPTA. Buyer and Seller are advised to seek legal counsel and tax
236 advice regarding their respective rights, obligations, reporting and withholding requirements pursuant to
237 FIRPTA.

238 (j) **SELLER DISCLOSURE:** Seller knows of no facts materially affecting the value of the Real Property which are
239 not readily observable and which have not been disclosed to Buyer. Except as provided for in the preceding
240 sentence, Seller extends and intends no warranty and makes no representation of any type, either express or
241 implied, as to the physical condition or history of the Property. Except as otherwise disclosed in writing Seller
242 has received no written or verbal notice from any governmental entity or agency as to a currently uncorrected
243 building, environmental or safety code violation.

244 **PROPERTY MAINTENANCE, CONDITION, INSPECTIONS AND EXAMINATIONS**

245 **11. PROPERTY MAINTENANCE:** Except for ordinary wear and tear and Casualty Loss, Seller shall maintain the
246 Property, including, but not limited to, lawn, shrubbery, and pool, in the condition existing as of Effective Date ("AS
247 IS Maintenance Requirement").

248 **12. PROPERTY INSPECTION; RIGHT TO CANCEL:**
249* (a) *PROPERTY INSPECTIONS AND RIGHT TO CANCEL: Buyer shall have* __10__ *(if left blank, then 15)*
250 *days after Effective Date ("Inspection Period") within which to have such inspections of the Property*
251 *performed as Buyer shall desire during the Inspection Period. If Buyer determines, in Buyer's sole*
252 *discretion, that the Property is not acceptable to Buyer, Buyer may terminate this Contract by delivering*
253 *written notice of such election to Seller prior to expiration of Inspection Period. If Buyer timely*
254 *terminates this Contract, the Deposit paid shall be returned to Buyer, thereupon, Buyer and Seller shall*
255 *be released of all further obligations under this Contract; however, Buyer shall be responsible for*
256 *prompt payment for such inspections, for repair of damage to, and restoration of, the Property resulting*
257 *from such inspections, and shall provide Seller with paid receipts for all work done on the Property (the*
258 *preceding provision shall survive termination of this Contract). Unless Buyer exercises the right to*
259 *terminate granted herein, Buyer accepts the physical condition of the Property and any violation of*
260 *governmental, building, environmental, and safety codes, restrictions, or requirements, but subject to*
261 *Seller's continuing AS IS Maintenance Requirement, and Buyer shall be responsible for any and all*
262 *repairs and improvements required by Buyer's lender.*

263 (b) **WALK-THROUGH INSPECTION/RE-INSPECTION:** On the day prior to Closing Date, or on Closing Date prior
264 to time of Closing, as specified by Buyer, Buyer or Buyer's representative may perform a walk-through (and
265 follow-up walk-through, if necessary) inspection of the Property solely to confirm that all items of Personal
266 Property are on the Property and to verify that Seller has maintained the Property as required by the AS IS
267 Maintenance Requirement and has met all other contractual obligations.

268 (c) **SELLER ASSISTANCE AND COOPERATION IN CLOSE-OUT OF BUILDING PERMITS:** If Buyer's inspection
269 of the Property identifies open or needed building permits, then Seller shall promptly deliver to Buyer all plans,
270 written documentation or other information in Seller's possession, knowledge, or control relating to
271 improvements to the Property which are the subject of such open or needed Permits, and shall promptly
272 cooperate in good faith with Buyer's efforts to obtain estimates of repairs or other work necessary to resolve
273 such Permit issues. Seller's obligation to cooperate shall include Seller's execution of necessary authorizations,

Serial#: 054833-000162-3014760

DocuSign Envelope ID: 35D3BE65-9058-45CD-9706-7DF7AAB53F43

274     consents, or other documents necessary for Buyer to conduct inspections and have estimates of such repairs
275     or work prepared, but in fulfilling such obligation, Seller shall not be required to expend, or become obligated to
276     expend, any money.
277    (d) **ASSIGNMENT OF REPAIR AND TREATMENT CONTRACTS AND WARRANTIES:** At Buyer's option and
278     cost, Seller will, at Closing, assign all assignable repair, treatment and maintenance contracts and warranties
279     to Buyer.

280                               **ESCROW AGENT AND BROKER**

281 **13. ESCROW AGENT:** Any Closing Agent or Escrow Agent (collectively "Agent") receiving the Deposit, other funds
282    and other items is authorized, and agrees by acceptance of them, to deposit them promptly, hold same in escrow
283    within the State of Florida and, subject to **COLLECTION**, disburse them in accordance with terms and conditions
284    of this Contract. Failure of funds to become **COLLECTED** shall not excuse Buyer's performance. When conflicting
285    demands for the Deposit are received, or Agent has a good faith doubt as to entitlement to the Deposit, Agent may
286    take such actions permitted by this Paragraph 13, as Agent deems advisable. If in doubt as to Agent's duties or
287    liabilities under this Contract, Agent may, at Agent's option, continue to hold the subject matter of the escrow until
288    the parties agree to its disbursement or until a final judgment of a court of competent jurisdiction shall determine
289    the rights of the parties, or Agent may deposit same with the clerk of the circuit court having jurisdiction of the
290    dispute. An attorney who represents a party and also acts as Agent may represent such party in such action. Upon
291    notifying all parties concerned of such action, all liability on the part of Agent shall fully terminate, except to the
292    extent of accounting for any items previously delivered out of escrow. If a licensed real estate broker, Agent will
293    comply with provisions of Chapter 475, F.S., as amended and FREC rules to timely resolve escrow disputes through
294    mediation, arbitration, interpleader or an escrow disbursement order.
295    In any proceeding between Buyer and Seller wherein Agent is made a party because of acting as Agent hereunder,
296    or in any proceeding where Agent interpleads the subject matter of the escrow, Agent shall recover reasonable
297    attorney's fees and costs incurred, to be paid pursuant to court order out of the escrowed funds or equivalent. Agent
298    shall not be liable to any party or person for mis-delivery of any escrowed items, unless such mis-delivery is due to
299    Agent's willful breach of this Contract or Agent's gross negligence. This Paragraph 13 shall survive Closing or
300    termination of this Contract.
301 **14. PROFESSIONAL ADVICE; BROKER LIABILITY:** Broker advises Buyer and Seller to verify Property condition,
302    square footage, and all other facts and representations made pursuant to this Contract and to consult appropriate
303    professionals for legal, tax, environmental, and other specialized advice concerning matters affecting the Property
304    and the transaction contemplated by this Contract. Broker represents to Buyer that Broker does not reside on the
305    Property and that all representations (oral, written or otherwise) by Broker are based on Seller representations or
306    public records. **BUYER AGREES TO RELY SOLELY ON SELLER, PROFESSIONAL INSPECTORS AND**
307    **GOVERNMENTAL AGENCIES FOR VERIFICATION OF PROPERTY CONDITION, SQUARE FOOTAGE AND**
308    **FACTS THAT MATERIALLY AFFECT PROPERTY VALUE AND NOT ON THE REPRESENTATIONS (ORAL,**
309    **WRITTEN OR OTHERWISE) OF BROKER.** Buyer and Seller (individually, the "Indemnifying Party") each
310    individually indemnifies, holds harmless, and releases Broker and Broker's officers, directors, agents and
311    employees from all liability for loss or damage, including all costs and expenses, and reasonable attorney's fees at
312    all levels, suffered or incurred by Broker and Broker's officers, directors, agents and employees in connection with
313    or arising from claims, demands or causes of action instituted by Buyer or Seller based on: (i) inaccuracy of
314    information provided by the Indemnifying Party or from public records; (ii) Indemnifying Party's misstatement(s) or
315    failure to perform contractual obligations; (iii) Broker's performance, at Indemnifying Party's request, of any task
316    beyond the scope of services regulated by Chapter 475, F.S., as amended, including Broker's referral,
317    recommendation or retention of any vendor for, or on behalf of, Indemnifying Party; (iv) products or services
318    provided by any such vendor for, or on behalf of, Indemnifying Party; and (v) expenses incurred by any such vendor.
319    Buyer and Seller each assumes full responsibility for selecting and compensating their respective vendors and
320    paying their other costs under this Contract whether or not this transaction closes. This Paragraph 14 will not relieve
321    Broker of statutory obligations under Chapter 475, F.S., as amended. For purposes of this Paragraph 14, Broker
322    will be treated as a party to this Contract. This Paragraph 14 shall survive Closing or termination of this Contract.

323                        **DEFAULT AND DISPUTE RESOLUTION**

324 **15. DEFAULT:**
325    (a) **BUYER DEFAULT:** If Buyer fails, neglects or refuses to perform Buyer's obligations under this Contract,
326     including payment of the Deposit, within the time(s) specified, Seller may elect to recover and retain the Deposit
327     for the account of Seller as agreed upon liquidated damages, consideration for execution of this Contract, and
328     in full settlement of any claims, whereupon Buyer and Seller shall be relieved from all further obligations under

Serial#: 054833-000162-3014760

Form
Simplicity

329  this Contract, or Seller, at Seller's option, may, pursuant to Paragraph 16, proceed in equity to enforce Seller's
330  rights under this Contract. The portion of the Deposit, if any, paid to Listing Broker upon default by Buyer, shall
331  be split equally between Listing Broker and Cooperating Broker; provided however, Cooperating Broker's share
332  shall not be greater than the commission amount Listing Broker had agreed to pay to Cooperating Broker.

333  (b) **SELLER DEFAULT:** If for any reason other than failure of Seller to make Seller's title marketable after
334  reasonable diligent effort, Seller fails, neglects or refuses to perform Seller's obligations under this Contract,
335  Buyer may elect to receive return of Buyer's Deposit without thereby waiving any action for damages resulting
336  from Seller's breach, and, pursuant to Paragraph 16, may seek to recover such damages or seek specific
337  performance.

338  This Paragraph 15 shall survive Closing or termination of this Contract.

339  **16. DISPUTE RESOLUTION:** Unresolved controversies, claims and other matters in question between Buyer and
340  Seller arising out of, or relating to, this Contract or its breach, enforcement or interpretation ("Dispute") will be settled
341  as follows:

342  (a) Buyer and Seller will have 10 days after the date conflicting demands for the Deposit are made to attempt to
343  resolve such Dispute, failing which, Buyer and Seller shall submit such Dispute to mediation under Paragraph
344  16(b).

345  (b) Buyer and Seller shall attempt to settle Disputes in an amicable manner through mediation pursuant to Florida
346  Rules for Certified and Court-Appointed Mediators and Chapter 44, F.S., as amended (the "Mediation Rules").
347  The mediator must be certified or must have experience in the real estate industry. Injunctive relief may be
348  sought without first complying with this Paragraph 16(b). Disputes not settled pursuant to this Paragraph 16
349  may be resolved by instituting action in the appropriate court having jurisdiction of the matter. This Paragraph
350  16 shall survive Closing or termination of this Contract.

351  **17. ATTORNEY'S FEES; COSTS:** The parties will split equally any mediation fee incurred in any mediation permitted
352  by this Contract, and each party will pay their own costs, expenses and fees, including attorney's fees, incurred in
353  conducting the mediation. In any litigation permitted by this Contract, the prevailing party shall be entitled to recover
354  from the non-prevailing party costs and fees, including reasonable attorney's fees, incurred in conducting the
355  litigation. This Paragraph 17 shall survive Closing or termination of this Contract.

356  **STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS")**

357  **18. STANDARDS:**

358  **A. TITLE:**

359  (i) **TITLE EVIDENCE; RESTRICTIONS; EASEMENTS; LIMITATIONS:** Within the time period provided in
360  Paragraph 9(c), the Title Commitment, with legible copies of instruments listed as exceptions attached thereto, shall
361  be issued and delivered to Buyer. The Title Commitment shall set forth those matters to be discharged by Seller at
362  or before Closing and shall provide that, upon recording of the deed to Buyer, an owner's policy of title insurance
363  in the amount of the Purchase Price, shall be issued to Buyer insuring Buyer's marketable title to the Real Property,
364  subject only to the following matters: (a) comprehensive land use plans, zoning, and other land use restrictions,
365  prohibitions and requirements imposed by governmental authority; (b) restrictions and matters appearing on the
366  Plat or otherwise common to the subdivision; (c) outstanding oil, gas and mineral rights of record without right of
367  entry; (d) unplatted public utility easements of record (located contiguous to real property lines and not more than
368  10 feet in width as to rear or front lines and 7 1/2 feet in width as to side lines); (e) taxes for year of Closing and
369  subsequent years; and (f) assumed mortgages and purchase money mortgages, if any (if additional items, attach
370  addendum); provided, that, none prevent use of Property for **RESIDENTIAL PURPOSES**. If there exists at Closing
371  any violation of items identified in (b) – (f) above, then the same shall be deemed a title defect. Marketable title shall
372  be determined according to applicable Title Standards adopted by authority of The Florida Bar and in accordance
373  with law.

374  (ii) **TITLE EXAMINATION:** Buyer shall have 5 days after receipt of Title Commitment to examine it and notify Seller
375  in writing specifying defect(s), if any, that render title unmarketable. If Seller provides Title Commitment and it is
376  delivered to Buyer less than 5 days prior to Closing Date, Buyer may extend Closing for up to 5 days after date of
377  receipt to examine same in accordance with this STANDARD A. Seller shall have 30 days ("Cure Period") after
378  receipt of Buyer's notice to take reasonable diligent efforts to remove defects. If Buyer fails to so notify Seller, Buyer
379  shall be deemed to have accepted title as it then is. If Seller cures defects within Cure Period, Seller will deliver
380  written notice to Buyer (with proof of cure acceptable to Buyer and Buyer's attorney) and the parties will close this
381  Contract on Closing Date (or if Closing Date has passed, within 10 days after Buyer's receipt of Seller's notice). If
382  Seller is unable to cure defects within Cure Period, then Buyer may, within 5 days after expiration of Cure Period,



Serial#: 054833-000162-3014760

Form
Simplicity

## STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED

383 deliver written notice to Seller: (a) extending Cure Period for a specified period not to exceed 120 days within which
384 Seller shall continue to use reasonable diligent effort to remove or cure the defects ("Extended Cure Period"); or
385 (b) electing to accept title with existing defects and close this Contract on Closing Date (or if Closing Date has
386 passed, within the earlier of 10 days after end of Extended Cure Period or Buyer's receipt of Seller's notice), or (c)
387 electing to terminate this Contract and receive a refund of the Deposit, thereby releasing Buyer and Seller from all
388 further obligations under this Contract.  If after reasonable diligent effort, Seller is unable to timely cure defects, and
389 Buyer does not waive the defects, this Contract shall terminate, and Buyer shall receive a refund of the Deposit,
390 thereby releasing Buyer and Seller from all further obligations under this Contract.
391 **B.  SURVEY:** If Survey discloses encroachments on the Real Property or that improvements located thereon
392 encroach on setback lines, easements, or lands of others, or violate any restrictions, covenants, or applicable
393 governmental regulations described in STANDARD A (i)(a), (b) or (d) above, Buyer shall deliver written notice of
394 such matters, together with a copy of Survey, to Seller within 5 days after Buyer's receipt of Survey, but no later
395 than Closing. If Buyer timely delivers such notice and Survey to Seller, such matters identified in the notice and
396 Survey shall constitute a title defect, subject to cure obligations of STANDARD A above. If Seller has delivered a
397 prior survey, Seller shall, at Buyer's request, execute an affidavit of "no change" to the Real Property since the
398 preparation of such prior survey, to the extent the affirmations therein are true and correct.
399 **C.   INGRESS AND EGRESS:** Seller represents that there is ingress and egress to the Real Property and title to
400 the Real Property is insurable in accordance with STANDARD A without exception for lack of legal right of access.
401 **D.   LEASE INFORMATION:** Seller shall, at least 10 days prior to Closing, furnish to Buyer estoppel letters from
402 tenant(s)/occupant(s) specifying nature and duration of occupancy, rental rates, advanced rent and security
403 deposits paid by tenant(s) or occupant(s)("Estoppel Letter(s)"). If Seller is unable to obtain such Estoppel Letter(s)
404 the same information shall be furnished by Seller to Buyer within that time period in the form of a Seller's affidavit
405 and Buyer may thereafter contact tenant(s) or occupant(s) to confirm such information. If Estoppel Letter(s) or
406 Seller's affidavit, if any, differ materially from Seller's representations and lease(s) provided pursuant to Paragraph
407 6, or if tenant(s)/occupant(s) fail or refuse to confirm Seller's affidavit, Buyer may deliver written notice to Seller
408 within 5 days after receipt of such information, but no later than 5 days prior to Closing Date, terminating this
409 Contract and receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under
410 this Contract. Seller shall, at Closing, deliver and assign all leases to Buyer who shall assume Seller's obligations
411 thereunder.
412 **E.   LIENS:** Seller shall furnish to Buyer at Closing an affidavit attesting (i) to the absence of any financing
413 statement, claims of lien or potential lienors known to Seller and (ii) that there have been no improvements or
414 repairs to the Real Property for 90 days immediately preceding Closing Date. If the Real Property has been
415 improved or repaired within that time, Seller shall deliver releases or waivers of construction liens executed by all
416 general contractors, subcontractors, suppliers and materialmen in addition  to Seller's lien affidavit setting forth
417 names of all such general contractors, subcontractors, suppliers and materialmen, further affirming that all charges
418 for improvements or repairs which could serve as a basis for a construction lien or a claim for damages have been
419 paid or will be paid at Closing.
420 **F.   TIME:** Calendar days shall be used in computing time periods. **Time is of the essence in this Contract.** Other
421 than time for acceptance and Effective Date as set forth in Paragraph 3, any time periods provided for or dates
422 specified in this Contract, whether preprinted, handwritten, typewritten or inserted herein, which shall end or occur
423 on a Saturday, Sunday, or a national legal holiday (see 5 U.S.C. 6103) shall extend to 5:00 p.m. (where the Property
424 is located) of the next business day.
425 **G.   FORCE MAJEURE:** Buyer or Seller shall not be required to perform any obligation under this Contract or be
426 liable to each other for damages so long as performance or non-performance of the obligation, or the availability of
427 services, insurance or required approvals essential to Closing, is disrupted, delayed, caused or prevented by Force
428 Majeure. "Force Majeure" means: hurricanes, floods, extreme weather, earthquakes, fire, or other acts of God,
429 unusual transportation delays, or wars, insurrections, or acts of terrorism, which, by exercise of reasonable diligent
430 effort, the non-performing party is unable in whole or in part to prevent or overcome. All time periods, including
431 Closing Date, will be extended a reasonable time up to 7 days after the Force Majeure no longer prevents
432 performance under this Contract, provided, however, if such Force Majeure continues to prevent performance under
433 this Contract more than 30 days beyond Closing Date, then either party may terminate this Contract by delivering
434 written notice to the other and the Deposit shall be refunded to Buyer, thereby releasing Buyer and Seller from all
435 further obligations under this Contract.
436 **H.   CONVEYANCE:** Seller shall convey marketable title to the Real Property by statutory warranty, trustee's,
437 personal representative's, or guardian's deed, as appropriate to the status of Seller, subject only to matters
438 described in STANDARD A and those accepted by Buyer. Personal Property shall, at request of Buyer, be

Serial#: 054833-000162-3014760

Form
Simplicity

DocuSign Envelope ID: 35D3BE65-905B-45CD-9706-7DF7AAB53F43

439  transferred by absolute bill of sale with warranty of title, subject only to such matters as may be provided for in this
440  Contract.

441  **I.  CLOSING LOCATION; DOCUMENTS; AND PROCEDURE:**

442  (i)  **LOCATION:** Closing will be conducted by the attorney or other closing agent ("Closing Agent") designated by
443  the party paying for the owner's policy of title insurance and will take place in the county where the Real Property
444  is located at the office of the Closing Agent, or at such other location agreed to by the parties. If there is no title
445  insurance, Seller will designate Closing Agent. Closing may be conducted by mail, overnight courier, or electronic
446  means.

447  (ii)  **CLOSING DOCUMENTS:** Seller shall at or prior to Closing, execute and deliver, as applicable, deed, bill of
448  sale, certificate(s) of title or other documents necessary to transfer title to the Property, construction lien affidavit(s),
449  owner's possession and no lien affidavit(s), and assignment(s) of leases. Seller shall provide Buyer with paid
450  receipts for all work done on the Property pursuant to this Contract. Buyer shall furnish and pay for, as applicable,
451  the survey, flood elevation certification, and documents required by Buyer's lender.

452  (iii)  **FinCEN GTO NOTICE. If Closing Agent is required to comply with the U.S. Treasury Department's
453  Financial Crimes Enforcement Network ("FinCEN") Geographic Targeting Orders ("GTOs"), then Buyer
454  shall provide Closing Agent with the information related to Buyer and the transaction contemplated by this
455  Contract that is required to complete IRS Form 8300, and Buyer consents to Closing Agent's collection and
456  report of said information to IRS.**

457  (iv)  **PROCEDURE:** The deed shall be recorded upon **COLLECTION** of all closing funds. If the Title Commitment
458  provides insurance against adverse matters pursuant to Section 627.7841, F.S., as amended, the escrow closing
459  procedure required by STANDARD J shall be waived, and Closing Agent shall, **subject to COLLECTION of all
460  closing funds,** disburse at Closing the brokerage fees to Broker and the net sale proceeds to Seller.

461  **J.  ESCROW CLOSING PROCEDURE:** If Title Commitment issued pursuant to Paragraph 9(c) does not provide
462  for insurance against adverse matters as permitted under Section 627.7841, F.S., as amended, the following
463  escrow and closing procedures shall apply: (1) all Closing proceeds shall be held in escrow by the Closing Agent
464  for a period of not more than 10 days after Closing; (2) if Seller's title is rendered unmarketable, through no fault of
465  Buyer, Buyer shall, within the 10 day period, notify Seller in writing of the defect and Seller shall have 30 days from
466  date of receipt of such notification to cure the defect; (3) if Seller fails to timely cure the defect, the Deposit and all
467  Closing funds paid by Buyer shall, within 5 days after written demand by Buyer, be refunded to Buyer and,
468  simultaneously with such repayment, Buyer shall return the Personal Property, vacate the Real Property and re-
469  convey the Property to Seller by special warranty deed and bill of sale; and (4) if Buyer fails to make timely demand
470  for refund of the Deposit, Buyer shall take title as is, waiving all rights against Seller as to any intervening defect
471  except as may be available to Buyer by virtue of warranties contained in the deed or bill of sale.

472  **K.  PRORATIONS; CREDITS:** The following recurring items will be made current (if applicable) and prorated as of
473  the day prior to Closing Date, or date of occupancy if occupancy occurs before Closing Date: real estate taxes
474  (including special benefit tax assessments imposed by a CDD), interest, bonds, association fees, insurance, rents
475  and other expenses of Property. Buyer shall have option of taking over existing policies of insurance, if assumable,
476  in which event premiums shall be prorated. Cash at Closing shall be increased or decreased as may be required
477  by prorations to be made through day prior to Closing. Advance rent and security deposits, if any, will be credited
478  to Buyer. Escrow deposits held by Seller's mortgagee will be paid to Seller. Taxes shall be prorated based on
479  current year's tax. If Closing occurs on a date when current year's millage is not fixed but current year's assessment
480  is available, taxes will be prorated based upon such assessment and prior year's millage. If current year's
481  assessment is not available, then taxes will be prorated on prior year's tax. If there are completed improvements
482  on the Real Property by January 1st of year of Closing, which improvements were not in existence on January 1st
483  of prior year, then taxes shall be prorated based upon prior year's millage and at an equitable assessment to be
484  agreed upon between the parties, failing which, request shall be made to the County Property Appraiser for an
485  informal assessment taking into account available exemptions. In all cases, due allowance shall be made for the
486  maximum allowable discounts and applicable homestead and other exemptions. A tax proration based on an
487  estimate shall, at either party's request, be readjusted upon receipt of current year's tax bill. This STANDARD K
488  shall survive Closing.

489  **L.  ACCESS TO PROPERTY TO CONDUCT APPRAISALS, INSPECTIONS, AND WALK-THROUGH:** Seller
490  shall, upon reasonable notice, provide utilities service and access to Property for appraisals and inspections,
491  including a walk-through (or follow-up walk-through if necessary) prior to Closing.

492  **M.  RISK OF LOSS:** If, after Effective Date, but before Closing, Property is damaged by fire or other casualty
493  ("Casualty Loss") and cost of restoration (which shall include cost of pruning or removing damaged trees) does not
494  exceed 1.5% of Purchase Price, cost of restoration shall be an obligation of Seller and Closing shall proceed
495  pursuant to terms of this Contract. If restoration is not completed as of Closing, a sum equal to 125% of estimated

## STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED

496 cost to complete restoration (not to exceed 1.5% of Purchase Price) will be escrowed at Closing. If actual cost of
497 restoration exceeds escrowed amount, Seller shall pay such actual costs (but, not in excess of 1.5% of Purchase
498 Price). Any unused portion of escrowed amount shall be returned to Seller. If cost of restoration exceeds 1.5% of
499 Purchase Price, Buyer shall elect to either take Property "as is" together with the 1.5%, or receive a refund of the
500 Deposit thereby releasing Buyer and Seller from all further obligations under this Contract. Seller's sole obligation
501 with respect to tree damage by casualty or other natural occurrence shall be cost of pruning or removal.

502 **N.   1031 EXCHANGE:** If either Seller or Buyer wish to enter into a like-kind exchange (either simultaneously with
503 Closing or deferred) under Section 1031 of the Internal Revenue Code ("Exchange"), the other party shall cooperate
504 in all reasonable respects to effectuate the Exchange, including execution of documents; provided, however,
505 cooperating party shall incur no liability or expense related to the Exchange, and Closing shall not be contingent
506 upon, nor extended or delayed by, such Exchange.

507 **O.  CONTRACT NOT RECORDABLE; PERSONS BOUND; NOTICE; DELIVERY; COPIES; CONTRACT**
508 **EXECUTION:** Neither this Contract nor any notice of it shall be recorded in any public records. This Contract shall
509 be binding on, and inure to the benefit of, the parties and their respective heirs or successors in interest. Whenever
510 the context permits, singular shall include plural and one gender shall include all. Notice and delivery given by or to
511 the attorney or broker (including such broker's real estate licensee) representing any party shall be as effective as
512 if given by or to that party. All notices must be in writing and may be made by mail, personal delivery or electronic
513 (including "pdf") media. A facsimile or electronic (including "pdf") copy of this Contract and any signatures hereon
514 shall be considered for all purposes as an original. This Contract may be executed by use of electronic signatures,
515 as determined by Florida's Electronic Signature Act and other applicable laws.

516 **P.   INTEGRATION; MODIFICATION:** This Contract contains the full and complete understanding and agreement
517 of Buyer and Seller with respect to the transaction contemplated by this Contract and no prior agreements or
518 representations shall be binding upon Buyer or Seller unless included in this Contract. No modification to or change
519 in this Contract shall be valid or binding upon Buyer or Seller unless in writing and executed by the parties intended
520 to be bound by it.

521 **Q.   WAIVER:** Failure of Buyer or Seller to insist on compliance with, or strict performance of, any provision of this
522 Contract, or to take advantage of any right under this Contract, shall not constitute a waiver of other provisions or
523 rights.

524 **R.   RIDERS; ADDENDA; TYPEWRITTEN OR HANDWRITTEN PROVISIONS:** Riders, addenda, and typewritten
525 or handwritten provisions shall control all printed provisions of this Contract in conflict with them.

526 **S.   COLLECTION or COLLECTED: "COLLECTION" or "COLLECTED" means any checks tendered or**
527 **received, including Deposits, have become actually and finally collected and deposited in the account of**
528 **Escrow Agent or Closing Agent. Closing and disbursement of funds and delivery of closing documents**
529 **may be delayed by Closing Agent until such amounts have been COLLECTED in Closing Agent's accounts.**

530 **T.   RESERVED.**

531 **U.   APPLICABLE LAW AND VENUE:** This Contract shall be construed in accordance with the laws of the State
532 of Florida and venue for resolution of all disputes, whether by mediation, arbitration or litigation, shall lie in the
533 county where the Real Property is located.

534 **V.   FIRPTA TAX WITHHOLDING:** If a seller of U.S. real property is a "foreign person" as defined by FIRPTA,
535 Section 1445 of the Internal Revenue Code ("Code") requires the buyer of the real property to withhold up to 15%
536 of the amount realized by the seller on the transfer and remit the withheld amount to the Internal Revenue Service
537 (IRS) unless an exemption to the required withholding applies or the seller has obtained a Withholding Certificate
538 from the IRS authorizing a reduced amount of withholding.

539 (i)   No withholding is required under Section 1445 of the Code if the Seller is not a "foreign person". Seller can
540 provide proof of non-foreign status to Buyer by delivery of written certification signed under penalties of perjury,
541 stating that Seller is not a foreign person and containing Seller's name, U.S. taxpayer identification number and
542 home address (or office address, in the case of an entity), as provided for in 26 CFR 1.1445-2(b). Otherwise, Buyer
543 shall withhold the applicable percentage of the amount realized by Seller on the transfer and timely remit said funds
544 to the IRS.

545 (ii)  If Seller is a foreign person and has received a Withholding Certificate from the IRS which provides for reduced
546 or eliminated withholding in this transaction and provides same to Buyer by Closing, then Buyer shall withhold the
547 reduced sum required, if any, and timely remit said funds to the IRS.

548 (iii)  If prior to Closing Seller has submitted a completed application to the IRS for a Withholding Certificate and has
549 provided to Buyer the notice required by 26 CFR 1.1445-1(c) (2)(i)(B) but no Withholding Certificate has been
550 received as of Closing, Buyer shall, at Closing, withhold the applicable percentage of the amount realized by Seller
551 on the transfer and, at Buyer's option, either (a) timely remit the withheld funds to the IRS or (b) place the funds in
552 escrow, at Seller's expense, with an escrow agent selected by Buyer and pursuant to terms negotiated by the

Buyer's Initials _____                    Page **10** of **12**                    Seller's Initials __JAN__   __CMN__

Form
Simplicity

**STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED**

553  parties, to be subsequently disbursed in accordance with the Withholding Certificate issued by the IRS or remitted
554  directly to the IRS if the Seller's application is rejected or upon terms set forth in the escrow agreement.
555  (iv) In the event the net proceeds due Seller are not sufficient to meet the withholding requirement(s) in this
556  transaction, Seller shall deliver to Buyer, at Closing, the additional COLLECTED funds necessary to satisfy the
557  applicable requirement and thereafter Buyer shall timely remit said funds to the IRS or escrow the funds for
558  disbursement in accordance with the final determination of the IRS, as applicable.
559  (v) Upon remitting funds to the IRS pursuant to this STANDARD, Buyer shall provide Seller copies of IRS Forms
560  8288 and 8288-A, as filed.
561  **W.  RESERVED**
562  **X.  BUYER WAIVER OF CLAIMS:** *To the extent permitted by law, Buyer waives any claims against Seller*
563  *and against any real estate licensee involved in the negotiation of this Contract for any damage or defects*
564  *pertaining to the physical condition of the Property that may exist at Closing of this Contract and be*
565  *subsequently discovered by the Buyer or anyone claiming* by, through, under or against the Buyer. *This*
566  *provision does not relieve Seller's obligation to comply with Paragraph 10(j). This Standard X shall survive*
567  *Closing.*

568  **ADDENDA AND ADDITIONAL TERMS**

569*  **19.  ADDENDA:** The following additional terms are included in the attached addenda or riders and incorporated into this
570  Contract (**Check if applicable**):

| | | |
|---|---|---|
| ☐ A.  Condominium Rider | ☐ K.  RESERVED | ☐ T.  Pre-Closing Occupancy |
| ☒ B.  Homeowners' Assn. | ☐ L.  RESERVED | ☐ U.  Post-Closing Occupancy |
| ☐ C.  Seller Financing | ☐ M.  Defective Drywall | ☐ V.  Sale of Buyer's Property |
| ☐ D.  Mortgage Assumption | ☐ N.  Coastal Construction Control | ☐ W.  Back-up Contract |
| ☐ E.  FHA/VA Financing | Line | ☐ X.  Kick-out Clause |
| ☐ F.  Appraisal Contingency | ☐ O.  Insulation Disclosure | ☐ Y.  Seller's Attorney Approval |
| ☐ G.  Short Sale | ☐ P.  Lead Paint Disclosure (Pre-1978) | ☐ Z.  Buyer's Attorney Approval |
| ☐ H.  Homeowners/Flood Ins. | ☐ Q.  Housing for Older Persons | ☐ AA.  Licensee Property Interest |
| ☐ I.  RESERVED | ☐ R.  Rezoning | ☐ BB.  Binding Arbitration |
| ☐ J.  Interest-Bearing Acct. | ☐ S.  Lease Purchase/ Lease Option | ☐ CC.  Miami-Dade County |
| | | Special Taxing District |
| | | Disclosure |
| | | ☐ Other: _____ |
| | | _____ |
| | | _____ |

571*  **20.  ADDITIONAL TERMS:** No appraisal contingency - Buyer will pay the difference in cash if appraisal comes in
572  lower than contract price
573  _____
574  _____
575  _____
576  _____
577  _____
578  _____
579  _____
580  _____
581  _____
582  _____
583  _____
584  _____
585  _____
586  _____
587  _____

588  **COUNTER-OFFER/REJECTION**

589*  ☐ Seller counters Buyer's offer (to accept the counter-offer, Buyer must sign or initial the counter-offered terms and
590  deliver a copy of the acceptance to Seller).
591*  ☐ Seller rejects Buyer's offer.

JAN    CMN

Serial#: 054833-000162-3014760

Form
Simplicity

592  **THIS IS INTENDED TO BE A LEGALLY BINDING CONTRACT. IF NOT FULLY UNDERSTOOD, SEEK THE**
593  **ADVICE OF AN ATTORNEY PRIOR TO SIGNING.**

594  **THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR.**

595  *Approval of this form by the Florida Realtors and The Florida Bar does not constitute an opinion that any of the*
596  *terms and conditions in this Contract should be accepted by the parties in a particular transaction. Terms and*
597  *conditions should be negotiated based upon the respective interests, objectives and bargaining positions of all*
598  *interested persons.*

599  AN ASTERISK (*) FOLLOWING A LINE NUMBER IN THE MARGIN INDICATES THE LINE CONTAINS A BLANK
600  TO BE COMPLETED.

601*  Buyer: _____    Date: _____ 6/6/2021 | 2:44:21 PM

602*  Buyer: _____    Date: _____ 6/6/2021 | 2:39:29 PM
       *Tonya Ronneberg*
       E610F3EEBE3045A...

603*  Seller: *Joseph Nicotea*    Date: 06/07/2021

604*  Seller: *Caroline Nicotera*    Date: 06/07/2021

605  Buyer's address for purposes of notice          Seller's address for purposes of notice
606* _____    _____
607* _____    _____
608* _____    _____

609  **BROKER:** Listing and Cooperating Brokers, if any, named below (collectively, "Broker"), are the only Brokers
610  entitled to compensation in connection with this Contract. Instruction to Closing Agent: Seller and Buyer direct
611  Closing Agent to disburse at Closing the full amount of the brokerage fees as specified in separate brokerage
612  agreements with the parties and cooperative agreements between the Brokers, except to the extent Broker has
613  retained such fees from the escrowed funds. This Contract shall not modify any MLS or other offer of compensation
614  made by Seller or Listing Broker to Cooperating Brokers.

615*              Michael  Chen                              Jane  LaFrance
616  **Cooperating Sales Associate, if any**          **Listing Sales Associate**

617*         La Rosa Realty Celebration                    Xcellence Realty Inc
618  **Cooperating Broker, if any**                    **Listing Broker**

# Comprehensive Rider to the
# Residential Contract For Sale And Purchase

THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR

 Florida Realtors®

**When initialed by all parties**, the parties acknowledge that the disclosure set forth below was provided to Buyer prior to execution of the Florida Realtors/Florida Bar Residential Contract For Sale and Purchase between the parties and the clauses below will be incorporated therein:

____JOSEPH A NICOTERA and  CAROLINE M NICOTERA_____ (SELLER)
and _____ (BUYER)
concerning the Property described as ___7671 OTTERSPOOL ST, KISSIMMEE, FL 34747____
____WINDSOR HILLS PHASE TWO PB 16 PGS 86-89 BLDG 7 LOT 6_____

*Buyer's Initials* _____   *Seller's Initials*   cmn        JAN

## B. HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE

**PART A.  DISCLOSURE SUMMARY**

**IF THE DISCLOSURE SUMMARY REQUIRED BY SECTION 720.401, FLORIDA STATUTES, HAS NOT BEEN PROVIDED TO THE PROSPECTIVE PURCHASER BEFORE EXECUTING THIS CONTRACT FOR SALE, THIS CONTRACT IS VOIDABLE BY BUYER BY DELIVERING TO SELLER OR SELLER'S AGENT OR REPRESENTATIVE WRITTEN NOTICE OF THE BUYER'S INTENTION TO CANCEL WITHIN 3 DAYS AFTER RECEIPT OF THE DISCLOSURE SUMMARY OR PRIOR TO CLOSING, WHICHEVER OCCURS FIRST. ANY PURPORTED WAIVER OF THIS VOIDABILITY RIGHT HAS NO EFFECT. BUYER'S RIGHT TO VOID THIS CONTRACT SHALL TERMINATE AT CLOSING.**

**BUYER SHOULD NOT EXECUTE THIS CONTRACT UNTIL BUYER HAS RECEIVED AND READ THIS DISCLOSURE.**

**Disclosure Summary For** _____Windsor Hills_____
                                    **(Name of Community)**

1.  AS A BUYER OF PROPERTY IN THIS COMMUNITY, YOU WILL BE OBLIGATED TO BE A MEMBER OF A HOMEOWNERS' ASSOCIATION ("ASSOCIATION").
2.  THERE HAVE BEEN OR WILL BE RECORDED RESTRICTIVE COVENANTS ("COVENANTS") GOVERNING THE USE AND OCCUPANCY OF PROPERTIES IN THIS COMMUNITY.
3.  YOU WILL BE OBLIGATED TO PAY ASSESSMENTS TO THE ASSOCIATION. ASSESSMENTS MAY BE SUBJECT TO PERIODIC CHANGE. IF APPLICABLE, THE CURRENT AMOUNT IS $_1274.45_____ PER _Quarter_____. YOU WILL ALSO BE OBLIGATED TO PAY ANY SPECIAL ASSESSMENTS IMPOSED BY THE ASSOCIATION. SUCH SPECIAL ASSESSMENTS MAY BE SUBJECT TO CHANGE. IF APPLICABLE, THE CURRENT AMOUNT IS $_____ PER _____.
4.  YOU MAY BE OBLIGATED TO PAY SPECIAL ASSESSMENTS TO THE RESPECTIVE MUNICIPALITY, COUNTY, OR SPECIAL DISTRICT. ALL ASSESSMENTS ARE SUBJECT TO PERIODIC CHANGE.
5.  YOUR FAILURE TO PAY SPECIAL ASSESSMENTS OR ASSESSMENTS LEVIED BY A MANDATORY HOMEOWNERS' ASSOCIATION COULD RESULT IN A LIEN ON YOUR PROPERTY.
6.  THERE MAY BE AN OBLIGATION TO PAY RENT OR LAND USE FEES FOR RECREATIONAL OR OTHER COMMONLY USED FACILITIES AS AN OBLIGATION OF MEMBERSHIP IN THE HOMEOWNERS' ASSOCIATION. IF APPLICABLE, THE CURRENT AMOUNT IS $_____ PER _____.
7.  THE DEVELOPER MAY HAVE THE RIGHT TO AMEND THE RESTRICTIVE COVENANTS WITHOUT THE APPROVAL OF THE ASSOCIATION MEMBERSHIP OR THE APPROVAL OF THE PARCEL OWNERS.
8.  THE STATEMENTS CONTAINED IN THIS DISCLOSURE FORM ARE ONLY SUMMARY IN NATURE, AND, AS A PROSPECTIVE PURCHASER, YOU SHOULD REFER TO THE COVENANTS AND THE ASSOCIATION GOVERNING DOCUMENTS BEFORE PURCHASING PROPERTY.
9.  THESE DOCUMENTS ARE EITHER MATTERS OF PUBLIC RECORD AND CAN BE OBTAINED FROM THE RECORD OFFICE IN THE COUNTY WHERE THE PROPERTY IS LOCATED, OR ARE NOT RECORDED AND CAN BE OBTAINED FROM THE DEVELOPER.

DocuSigned by:

6/6/2021 | 2:44:21 PM PDT

_____                    _____
DATE                                       BUYER
                                           —26A2F8C850D403...
6/6/2021 | 2:39:29 PM PDT                   DocuSigned by:
                                           Tonya Ronneberg
_____                    _____
DATE                                       BUYER
                                           E610F3EEBE3045A...

**Page 1 of 2   B. HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE**        (SEE CONTINUATION)

CR-5x Rev. 6/19 © 2017 Florida Realtors® and The Florida Bar.  All rights reserved.

This software is licensed to [Alan LaFrance - XCELLENCE REALTY] www.transactiondesk.com.

InstanetFORMS

**B. HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE (CONTINUED)**

**PART B.**

The Property is located in a community with a mandatory homeowners' association or an association that may require the payment of assessments, charges, or impose restrictions on the Property ("Association").

1. **APPROVAL:** If Association approval of this transaction or the Buyer is required, this Contract is contingent upon Association approval no later than ___N/A___ (if left blank, then 5) days prior to Closing. Within ___N/A___ (if left blank, then 5) days after Effective Date, the Seller shall initiate the approval process with Association. Buyer shall pay application and related fees, as applicable, unless otherwise provided for in Association governing documents or agreed to by the parties. Buyer and Seller shall sign and deliver any documents required by the Association, provide for interviews or personal appearances, if required, and use diligent effort to timely obtain Association approval. If approval is not granted within the stated time period above, Buyer may terminate this Contract, and shall be refunded the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract.

2. **PAYMENT OF FEES, ASSESSMENTS, AND OTHER ASSOCIATION CHARGES:**
   (a) Buyer shall pay any application, initial contribution, and/or membership or other fees charged by Association pursuant to its governing documents or applicable Florida Statutes. If applicable, the current amount(s) is:

   $_____ per_____ for _____ to _____
   $_____ per_____ for _____ to _____
   $_____ per_____ for _____ to _____
   $_____ per_____ for _____ to _____

   (b) If levied special or other assessments exist as of the Effective Date, or an assessment is levied after the Effective Date and prior to the Closing Date, and any such assessment(s) may be paid in installments, then Seller shall pay all installments due before Closing Date and (**CHECK ONE**):  ☐ Buyer  ☐ Seller (if left blank, then Buyer) shall pay installments due after Closing Date. **If Seller is checked, Seller shall pay the assessment in full prior to or at the time of Closing.**

**The Association or Management Company to which assessments, special assessments or rent/land use fees are due and payable, is/are:**

Windsor Hills _____    _____

Contact Person __Ms. Aura Zelada General Manager__    Contact person _____

Phone __407- 787-4255__ Email _____    Phone _____ Email    Artemis Lifestyles Website
whmanager@welcometowindsorhills.com.                                                  http://
                                                                                     www.artemislifestyles.com

**Additional contact information can be found on the Association's website, which is www.** __www.artemislifestyles.com__

Artemis Lifestyles                              Artemis Lifestyles Website
1631 East Vine Street                           http://www.artemislifestyles.com
Suite 300
Kissimmee, FL 34744                             Please note there is a one time fee to join the two
Artemis Lifestyles Office                       associations about $500.00 each and transfer fees of about
Phone: 407-705-2190                             200.00 each.
Email:customerservice@ArtemisLifestyles.com

CR-5x Rev. 6/19 © 2017 Florida Realtors® and The Florida Bar. All rights reserved.

This software is licensed to [Alan LaFrance - XCELLENCE REALTY] www.transactiondesk.com.

InstanetFORMS

DocuSign Envelope ID: 35D3BE65-9058-45CD-9706-7DF7AABE3F43

Seller List of items being removed:

Shoe Rack

Font Runner                            JAN          CMN

I pc are monet


Blue room master

Bedspread

1 pc art


Kitchen

Some dishware

Poppy artwork

Tablecloth

Slip covers

Mirror


All Nic nacks

Hose

Master artwork

All closets emtied

Items in the pantry

Label Matrix for local noticing
0422-3
Case 20-31700-KLP
Eastern District of Virginia
Richmond
Wed Jun  9 16:15:47 EDT 2021

Community Loan Servicing, LLC Fka Bayview Lo
8100 Three Chopt Rd.
Suite 240
Richmond, VA 23229-4833

U.S. BANK NATIONAL ASSOCIATION
14841 DALLAS PKWY SUITE 425
Dallas, TX 75254-8067

U.S. Bank National Association
BWW Law Group, LLC
8100 Three Chopt Rd, Suite 240
Richmond, VA 23229-4833

Virginia Partners Bank
PO Box 8029
Fredericksburg, VA 22404-8029

United States Bankruptcy Court
701 East Broad Street
Richmond, VA 23219-1888

AES/FED
PO Box 2461
Harrisburg, PA 17105-2461

Aura Zelada
1631 East Vine St. Ste. 300
Kissimmee, FL 34744-3710

Bank of America
Attn: Bankruptcy
P.O. 982284
El Paso, TX 79998-2284

C. Conrad c/o Jason Pelt
2052 Jefferson Davis Highway
Suite 201
Stafford, VA 22554-7286

Cavalry Portfolio Services
500 Summit Lake
Suite 400
Valhalla, NY 10595-2322

Cavalry SPV I, LLC
500 Summit Lake Drive, Ste 400
Valhalla, NY 10595-2321

Commonwealth of Virginia
Department of Taxation
PO Box 2156
Richmond, VA 23218-2156

Community Loan Servicing, LLC fka
Bayview Loan Servicing, LLC
4425 Ponce de Leon Blvd, 5th Floor
Coral Gables, FL 33146-1837

David Murphy
40 Carousel Dr.
Portland, CT 06480-1257

Don Southern
c/o Goodall, Pelt, Carper
1259 Courthouse Road
Stafford, VA 22554-7124

ECMC
PO BOX 16408
ST. PAUL, MN 55116-0408

ECMC Group
Attn: Bankruptcy
111 Washington Ave South, Ste 1400
Minneapolis, MN 55401-6800

EduCap Inc.
Attn: Bankruptcy
PO Box 82522
Lincoln, NE 68501-2522

EduCap, INC. - Loan to Learn
Firstmark Services
PO Box 82522
Lincoln, NE 68501-2522

Fredericksburg Emergency Med
1001 Sam Perry Blvd
Fredericksburg, VA 22401-4453

Internal Revenue Service
Centralized Insolvency Operati
P. O. Box 7346
Philadelphia, PA 19101-7346

John A. Nere, Jr., P.C.
806 Princess Anne St.
Fredericksburg, VA 22401-5820

Kevin Fitzsimmons
11 Wheelwright LN
Stafford, VA 22554-8833

Martin C. Conway
12934 Hardbor Dr. Ste. 107
Woodbridge, VA 22192-2930

Mary Washington Hospital
1001 Sam Perry Blvd
Fredericksburg, VA 22401-4453

OneMain Financial
Attn: Bankruptcy
Po Box 3251
Evansville, IN 47731-3251

Pentagon Federal Cr Un
2930 Eisenhower Ave
Alexandria, VA 22314-4557

Pentagon Federal Credit Union
4875 Preston Road
Frisco, TX 75034-8523

(p)PENTAGON FEDERAL CREDIT UNION
ATTN BANKRUPTCY DEPARTMENT
P O BOX 1432
ALEXANDRIA VA 22313-1432

Pentagon Federal Credit Union
RA Rogers Inc
PO Box 3302
Crofton, MD 21114-0302

Quantum3 Group LLC as agent for
Velocity Investments LLC
PO Box 788
Kirkland, WA 98083-0788

Quantum3 Group, LLC
PO Box 788
Kirkland, WA 98083-0788

Rafael Rivera
6114 Dory Landing Court
Burke, VA 22015-2506

Shane A. Sims
PO Box 7166
Fredericksburg, VA 22404-7166

Sharon Stuart, Esquire
8002 Discovery Drive, Ste. 422
Henrico, VA 23229-8601

Southwest Credit Systems
4120 International Parkway
Suite 1100
Carrollton, TX 75007-1958

Spotsylvania County Treasurer
9104 Courthouse Rd
Spotsylvania, VA 22553-1902

Spotsylvania County Treasurer's Office
P.O. Box 100
Spotsylvania, VA 22553-0100

(p)US BANK
PO BOX 5229
CINCINNATI OH 45201-5229

US Attorneys Office
Eastern District of Virginia
919 E Main St., Ste. 1900
Richmond, VA 23219-4625

US Bank Home Mortgage
4801 Frederica St.
Owensboro, KY 42301-7441

US Department of Education
PO Box 105028
National Payment Center
Atlanta, GA 30348-5028

USAA Federal Savings Bank
Attn: Bankruptcy
10750 Mcdermott Freeway
San Antonio, TX 78288-1600

USAA Federal Savings Bank
Robertson, Anschutz, Schneid & Crane LLC
10700 Abbotts Bridge Road, Suite 170
Duluth, GA 30097-8461

Verizon
by American InfoSource as agent
4515 N Santa Fe Ave
Oklahoma City, OK 73118-7901

Victor and Barbara Ellenfield
1025 Potomac Drive
Stafford, VA 22554-2103

Virginia Department of Taxatio
PO Box 2369
Richmond, VA 23218-2369

Virginia Partners Bank
410 William Street
Fredericksburg, VA 22401-5834

Virginia Partners Bank
John A. Nere, Jr.
806 Princess Anne Street
Fredericksburg, VA 22401-5820

Virginia Partners Credit Union
Po Box 8029
Fredericksburg, VA 22404-8029

Vistas at Windsor Hills Townho
1631 East Vine St. Ste. 300
Kissimmee, FL 34744-3710

Windsor Hills Master Community
1631 East Vine St., Ste. 300
Kissimmee, FL 34744-3710

Carolyn Marie Nicotera
1415 Heatherstone Drive
Fredericksburg, VA 22407-4834

James E. Kane
Kane & Papa, PC
1313 East Cary Street
P.O. Box 508
Richmond, VA 23218-0508

John P. Fitzgerald, III
Office of the US Trustee - Region 4 -R
701 E. Broad Street, Ste. 4304
Richmond, VA 23219-1849

Joseph Anthony Nicotera
1415 Heatherstone Drive
Fredericksburg, VA 22407-4834

Suzanne E. Wade
341 Dial 877-996-8484 Code 2385911
7202 Glen Forest Drive, Ste. 202
Richmond, VA 23226-3770

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Pentagon Federal Credit Union
Attn: Bankruptcy
Po Box 1432
Alexandria, VA 22313-0000

U.S. Bank National Association
c/o U.S. Bank Home Mortgage,
a division of U.S. Bank N.A.
4801 Frederica Street
Owensboro, Kentucky 42301

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Pentagon Federal Credit Union

(d)USAA Federal Savings Bank
Attn: Bankruptcy
10750 Mcdermott Freeway
San Antonio,, TX 78288-1600

End of Label Matrix
Mailable recipients    57
Bypassed recipients     2
Total                  59